# Booz's Appeal.

1. The building association Act of April 12th, 1859, P. L. 544, was general in its nature and impliedly repealed former Acts under which building associations had been chartered. The Act of March 26th, 1867, P. L. 44, authorizing the courts of Common Pleas to grant charters to building associations conferred no new power on such courts, nor did it define the powers of such associations chartered under it; to ascertain which recourse must be had to the general Act of 1859.

2. A building association organized in 1870 will be deemed and taken to be incorporated under the provisions of the general Act of April 12th, 1859, P. L. 544.

3. The powers of a building association are to be gathered from the statute under which it was organized rather than from the articles of association, and in case of a conflict the former must prevail. When the articles of association contain a provision repugnant to the provision in the statute upon the same subject matter, the corporation may pass a valid resolution or adopt a by-law in harmony with the statutory provision even though it be inconsistent with the articles of association.

4. The constitution of a building association provided that a withdrawing member " shall receive the amount of dues actually paid in, first deducting all fines and charges." The association ceased to lend its funds which began to accumulate, and accordingly passed a by-law granting to each withdrawing member " the amount of dues actually paid in *and fifteen per cent. per annum interest thereon*, first deducting all fines and charges." This fifteen per cent. was at the time of the adoption of the by-law a fair *bona fide* estimate of the accumulated profits.

   *Held*, in a bill in equity filed by non-withdrawing stockholders, that the by-law was not *ultra vires* notwithstanding the said provisions of the constitution, but was valid under the general Act of April 12th, 1859, P. L. 544, which authorizes withdrawing members to receive the amount paid in by their first deducting all fines and charges " and such proportion of the profits as the by-laws may determine."

5. A building association may authorize its borrowing members to withdraw and be released from further liability upon the payment of dues, interest and fines up to a specified time, and may afterwards resolve that such permission shall remain open only until a certain date. Borrowing members who fail to avail themselves of their opportunity before the date so determined, cannot do so afterwards.

April 17th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ. GREEN, J., absent.

APPEAL from the Court of Common Pleas of *Luzerne county :* Of July Term 1885, No. 2.

Appeal of H. N. Booz et al. from the decree of the court of Common Pleas of Luzerne county, dismissing a bill in equity filed by the appellants against the Mechanics' Building and Loan Association and its officers for the purpose of having de-

clared void and *ultra vires* a certain by-law of the defendant association which authorized the payment of interest at 15 per cent. to certain withdrawing members; and certain acts of the directors defendant in cancelling the stock of borrowing members on their payment of dues, interest and fines up to a certain time. The bill also prayed for the appointment of a receiver and an injunction restraining the defendant from doing the acts complained of in the bill.

This bill was filed by H. N. Booz, John B. Quick, Thomas Pryor, S. H. Sturdevant, James B. Miller, suing as well for themselves as on behalf of such other stockholders as might unite with them in the bill against the Mechanics' Building and Loan Association and C. B. Dana, president; I. E. Ross, vice president; D. Sturdevant, secretary; M. L. Tiffany, L. L. Ayres, H. H. Derr, W. F. Goff, W. M. Bennett, W. S. McLean and Urban Dilley, directors of said association. The defendants having filed an answer the cause was referred to Alexander Farnham, Esq. as Examiner and Master who found in his report the following as the facts in the case:

The association was formed for the purpose of conducting business as a building and loan association and for the objects recognized and allowed by law with respect to such associations; and under the name and title of the Mechanics' Building and Loan Association of South Wilkes-Barre was decreed to be a body corporate. It was fully organized, adopted by laws and proceeded to transact business after the usual manner of such associations.

Article XI of the articles of incorporation of the association provided: "The stockholders shall have power to make by-laws for the government of the association, and the board of directors shall have power to make such other rules and regulations as may be deemed requisite: provided always, that the said by-laws, rules and ordinances, or any of them, be not repugnant to the Constitution and laws of the United States, or of this Commonwealth, or to these articles of incorporation."

Section 1, of Article VIII, provides: "Any stockholder wishing to leave the association and withdraw his money, shall give at least one month's notice to the directors, when he or she shall receive the amount of dues actually paid in by him or her, first deducting all fines and charges. In case a number of members wish to withdraw at the same time, the first notice shall always take precedence; provided, that at no time shall more than one half the fund in the treasury of the association be applicable to the demands of withdrawing members, without consent of the board of directors."

Article XIV: "If at any time no bid shall be made for the moneys to be loaned out, the members shall be bound to take

13 OUTERBRIDGE—38

up the loans at the lowest premium fixed, beginning with that member who shall hold the largest number of shares unincumbered, but no one shall be compelled in a single month to take more than one loan in this manner."

"In case no bids for the money in treasury shall be made, and members should refuse to take the loans for their shares, or to give security for the same, then the amount of their shares paid in shall be returned without interest, after deducting the fines, costs and proportionate losses to those in default as aforesaid, and for this violation of the constitution, their names shall be stricken from the list of members."

At the regular monthly meeting of the directors held January 27th, 1877, the following proposed by-law was submitted, and entered on the minute book of the association.

"Any stockholder withdrawing from this association shall be entitled to receive the amount of dues actually paid in, and fifteen per cent. interest thereon, first deducting all fines and charges."

At the same meeting (on January 27th, 1877,) the secretary of the association was requested by writing, signed by the requisite number of stockholders, to convene a meeting of the stockholders on the 7th day of March, 1877, at 7:30 o'clock P. M., for the purpose of voting on the said proposed by-law.

In accordance with this request, the secretary called a meeting of the stockholders to convene at the time and for the purpose mentioned in the written request, and caused notice thereof to be published, pursuant to Section 4 of Article III. of the by-laws.

Pursuant to said call and notice, a meeting of the stockholders was had on March 7th, 1877, at which the said proposed by-law was voted upon and adopted by a vote of the stockholders present.

The plaintiffs all became borrowers prior to the submission and adoption of said by-law, and continued in that relation until the commencement of this action.

Prior to the submission of said new by-law and at the regular monthly meeting of the directors held December 23d, 1876, the money on hand was offered for loan to the shareholders, and, no bid being received, an allotment was made under the provisions of article XIV. of the constitution; this allotment was refused by some of the shareholders to whom it was made; the association became unable to make loans of its funds which continued to accumulate without demand therefor from the members, and the said new by-law was submitted and finally adopted in view and because of this inability to make loans as aforesaid, and the amount for each share authorized to be paid to stockholders withdrawing under said by-law was

supposed to be about the value of such share at the time of withdrawal.

In pursuance of this new by-law, a large number of unincumbered shares (two hundred and eighteen out of two hundred and ninety-eight) were withdrawn from the association, and holders receiving the amount of dues actually paid in by them, together with fifteen per centum per annum interest, after deducting all fines and charges.

At a regular meeting of the directors held May 26th, 1877, the following resolution was passed:—

"That any member who is a borrower from the association, upon the payment of dues, interest and fines up to and including the 102d month of the association, shall be released from all obligations to the association for each share thus paid."

At the 95th regular meeting of the directors held February 23d, 1878, it was resolved that the resolution of 26th May, 1877, "shall remain in force only until and including the meeting of the association to be held April 27th, 1878."

Under the resolution 26th May, 1877, and up to and including the meeting of 27th April, 1878, five hundred and thirty shares of incumbered stock were cancelled and the owners of the same released from their obligations.

The plaintiffs did not, during the time limited, pay their dues, fines and interests up to and including the 102d meeting.

The grounds of complaint alleged in the bill were improvidence and neglect.

1. The fifteen per cent. by-law and the payments to shareholders withdrawing thereunder, which action the complainants desired to have annulled in order that the shareholders may be brought in to contribute by their dues to the ultimate losses of the enterprise.

2. The cancellation of the stock of borrowers under the resolutions of 26th May, 1877, and 23rd February, 1878, the complainants likewise desiring that this action may be annulled and the released borrowers brought back to share also in the final results.

3. The refusal of the association to cancel the stock of the complainants and to release them from their obligations upon their demand, because at the time of this demand (but subsequently to the period appointed) they had paid their dues, interest and fines up to and including the one hundred and second meeting, and this, notwithstanding they deem such action to be illegal and *ultra vires*.

The master reported in his conclusions of law inter alia as follows: "The plaintiffs contend that the by-law has no validity because of its repugnancy to article VIII of the constitution of the association. The power of the stockholders to

make by-laws is derived under article XI and is coupled with a condition that, among other things, no by-law shall be repugnant to the articles of incorporation. No exception seems to be taken to the method or procedure followed in the adoption of the by-law. It is true that it was drawn out that no other notice than by publication was given of the called meeting of stockholders, and that a comparatively small proportion of stockholders voted on its adoption. This I deem unimportant in view of the fact that each successive step in the proceeding appears to have been in strict conformity to the provisions of the constitution and by-laws in such behalf. If the by-law is not void because of repugnancy to the articles of incorporation, its validity otherwise cannot be questioned.

"Some confusion is necessarily caused by regarding the articles of association as alone constituting the charter. The charter of a corporation is a grant of privileges from the sovereign power which is exercised for the purpose in this state through legislation. In the case of a corporation obtaining its grant directly from the legislature, the Act of Assembly declaring its incorporation and prescribing its privileges and powers is in itself the charter without other instrument being required. When, however, as in this instance a corporation is created by virtue of a general law taking effect only by a decree of a court based upon the statement of the objects and purposes of the proposed corporation, then the Act of Assembly, the decree of the court and the articles of association (in so far as they comply with the Act) all together constitute the charter. The articles of association throw light upon the intent of the corporators. They help us to determine under which Act of Assembly it is intended to become incorporated. In no other way can the court assume to decree an incorporation, having no means otherwise of ascertaining whether the Act of Assembly authorizing the decree will apply. The privileges and powers therefore of the association are to be sought in the Act of Assembly rather than in the articles of association. This leads us to the question suggested by the twelfth paragraph of the bill, viz: whether this association was incorporated under the Act of 12th April, 1859. That article XIV of the constitution is repugnant to the provisions of that Act would seem beyond question (Stiles's Appeal, 14 Norris, 122), but I do not concur in the view taken by the plaintiffs' counsel, that this renders the Act of 12th April, 1859, inapplicable to the association. The case of Rhoads *v.* Hoernerstown Building and Savings Institution, 1 Norris, 180, upon which they rely, cannot well be extended to other cases of like character. One of the inconsistent provisions relied on by Judge Paxson in that case, viz., the want of limitation of duration of

the corporation to twenty years, existed also in the case of Becket *v.* Association, 7 Norris, 211, and yet the association in this last case was held incorporated under the Act of 12th April, 1859. Under the authority of the case last cited, any provisions in the articles of association inconsistent with the general Act, are to be disregarded. See also Albright *v.* Association, 41 Leg. Int., 96. It is plain, also, from the evidence that in the present case the association actually operated under and transacted business in pursuance and by virtue of its charter and the decree of the court, so that the curative Act of 11th May, 1874, would in any case apply. See, also, Workingmen's Building and Loan Association *v.* Coleman, 8 Norris, 428."

The master therefore reported upon the whole case that the complainants were not entitled to the relief prayed for and recommended that their bill be dismissed. The complainants filed exceptions to the report of the master, which were dismissed by the court, whereupon they took this appeal, assigning for error in numerous specifications the action of the court in dismissing their exceptions and confirming the report of the master, and in dismissing their bill.

*J. Vaughan Darling* (with whom was *W. P. Ryman*), for appellants. The by-law of March 7th, 1877, was inconsistent with the charter and therefore void: Angell & Ames on Corporations, § 343; Commonwealth *v.* Gill, 3 Wharton, 228; Raynor *v.* Beatty, 9 W. N. C., 201. Nor can this action be validated by reason of § 2, of the Building Association Act of 1859. In Stiles's Appeal, 95 Pa. St., 122; Albright *v.* Building Association, 41 Leg. Int., 96, there was a direct violation of that Act. Here the § 2 of the Act leaves to the discretion of the stockholders what portion of profits shall be paid to withdrawing members. Moreover, in addition to the Act of 1859 the Act of March 26th, 1867, P. L., 44, authorizes the courts of Common Pleas to incorporate building associations. Under this Act the disputed provision of our charter is valid. The obligation of members of this association is mutual and the directors cannot by resolution release a portion of the members from their original obligation and hold the remainder to their fulfilment. A borrower cannot be compelled to advance his dues in order to secure a privilege which his wealthier partner may be able and willing to take advantage of: Laurel Run Building Association *v.* Sperving, 10 Out., 334.

*William S. McLean*, for appellees.—This association was incorporated under the Act of 1859: Workingmen's Building Association *v.* Coleman, 89 Pa. St., 428; Becket *v.* Union-

town Building Association, 88 Id., 211; Stiles's Appeal, 95 Id., 122; Albright *v.* Building Association, 41 Leg. Int., 96. The charter, Art. VIII., merely fixes the minimum amount to be paid a withdrawing stockholder, and if it is designed to do more it contravenes the incorporating Act: Becket *v.* Building Association, *supra.*

Mr. Justice PAXSON delivered the opinion of the court, June 4th, 1885.

The Mechanics' Building and Loan Association of South Wilkes-Barre, appellee, was evidently incorporated under the Act of 12th April, 1859 (P. L., 544). It was held in Rhoads *v.* Hoernerstown Building and Savings Association, 1 Norris, 180, that said Act was general and impliedly repealed the whole system of patchwork by which building associations had been chartered prior to its passage. The contention that the building association, appellee, was incorporated under the subsequent Act of 26th March, 1867 (P. L., 44), is of little importance. An examination of said Act shows that by the third section the courts of Common Pleas are authorized to grant charters for certain purposes, among which building associations are included. The draftsman of said Act was evidently ignorant of the fact that such power had previously been conferred upon the courts of Common Pleas. The Act of 1867 therefore conferred no new power in this respect, and for all practical purposes might as well not have been passed. Aside from this it does not define the powers of such associations, and we are obliged to fall back upon the Act of 1859 to ascertain them. We are therefore of opinion that the learned Master and the court below were correct in holding that the rights of the parties in this case must be measured by the Act of 1859, and not otherwise.

While the assignments of error are numerous the principles involved in the case are few and easily understood. The whole trouble grows out of the fact that the association, while prosperous at the commencement of its business, ceased to be so at the close of 1876 or the beginning of 1877. This was but the natural result of the financial disturbances following the year 1873. The consequence was the association could not loan its money. It culminated in the passage of a by-law on March 7th, 1877, providing that "Any stockholder withdrawing from this association shall be entitled to receive the amount of dues actually paid in, and fifteen per cent. interest thereon, first deducting all fines and charges." In reference to this by-law the Master finds: "That prior to the submission of said new by-law, and at the regular monthly meeting of the directors held December 23d, 1876, the money on hand

was offered for loan to the shareholders, and no bid being received an allotment was made under the provisions of Article XIV of the Constitution ; that this allotment was refused by some of the shareholders to whom it was made ; that the association became unable to make loans of its funds which continued to accumulate without demand therefor from the members, and that the said new by-law was submitted and finally adopted in view and because of this inability to make the loans as aforesaid, and that the amount for each share authorized to be paid to stockholders withdrawing under said by-law was supposed to be about the value of each share at the time of withdrawal."

The learned Master further finds that said by-law was regularly adopted after the requisite notice, and that all the necessary forms had been fully complied with. That the appellants did not know of it at the time, if the fact be so, is not to the purpose. It was not done in a corner, and there is not the slightest ground for any allegation of fraud or concealment in its adoption. Under such circumstances it is binding upon the appellants and all other members of the association, unless in conflict with the charter or the law of the land.

It is repugnant to neither. It is true the 8th article of the charter provides that withdrawing stockholders " shall receive the amount of dues actually paid in by him or her, first deducting all fines and charges," but makes no mention of interest or profits. But the Act of 1859 must be written with this charter, and it provides that a withdrawing stockholder shall receive in addition to the dues actually paid in " such proportion of the profits as the by-laws may determine." Here we have a by-law which fixes interest at 15 per cent. on the amount paid in as the share profits. It is true the word " profits " is not used, but that is the plain meaning of this by-law. The association thought, and the Master has found, that the shares at the time were worth that much. We have then under the Act of 1859 a clear right to withdraw, and a perfectly proper and legal by-law by which the withdrawing members went out, and took with them such share of the profits as was honestly believed to be their due. So far as they are concerned they are out of the association ; they have no further claim upon it, nor have the appellants or the association any claim upon them.

The effect might have been foreseen by any one conversant with the practical working of building associations. A large number of borrowers and a few non-borrowers were left. Its remaining assets were affected by the shrinkage and losses incident to all property at that time. All of this loss fell upon those who remained in. The association could not wind up at

the 102d meeting, as was at one time contemplated. The borrowing members now want their loans cancelled and their liens satisfied, although their stock has not matured. This would let them out without having paid up in full, and throw the whole loss on the non-borrowers. It needs no argument to show that this cannot be done. The appellants have no equity to make such a demand, nor have we any power to grant it. The owners of the free shares propose to pay up until the stock matures, and ask that the appellants shall do likewise. There is perfect justice in this. If the appellants made a mistake in not going out when they had the privilege of doing so, they cannot complain that others took advantage of the opportunity and have bettered their condition thereby. And even if, as alleged, they had not the means to pay up and cancel their loans, it is their misfortune, and it cannot be visited upon those who were more fortunate. It only demonstrates the truth of what was said in Watkins *v.* Building and Loan Association, 1 Out., 514: "It is much to be feared that many persons of slender means embark in such enterprises without a clear understanding of their practical working."

The Master has found that there was neither fraud nor gross mismanagement in the affairs of the association. And had there been losses from such causes, it is difficult to see what relief the appellants are entitled to, either as against the withdrawing members who have legally and in good faith severed their connection with the association, or as against the association itself, in this contest over the remaining assets. That losses have been sustained, from whatever cause, does not entitle non-borrowers to throw such losses upon the borrowers, nor the latter to throw them upon the non-borrowers. Each class must meet its full share of the responsibility which it has assumed.

The foregoing covers all that we deem material in the case.

The decree is affirmed and the appeal dismissed at the costs of the appellants.