**Nannie MICKLES, Plaintiff–Appellant,**

v.

**Donna SHALALA, Secretary of Health and Human Services, Defendant–Appellee.**

**No. 93–1891.**

United States Court of Appeals, Fourth Circuit.

Argued Feb. 7, 1994.

Decided July 18, 1994.

**ARGUED:** Hugh Fairley O'Donnell, Client Centered Legal Services of Southwest Virginia, Inc., Castlewood, VA, for appellant. Robert Drum, Office of the General Counsel, Dept. of Health and Human Services, Philadelphia, PA, for appellee. **ON BRIEF:** Charlotte Hardnett, Chief Counsel, Region III, Steven M. Rollins, Asst. Regional Counsel, Office of the General Counsel, Dept. of Health and Human Services, Philadelphia, PA; Robert P. Crouch, Jr., U.S. Atty., John F. Corcoran, Asst. U.S. Atty., Roanoke, VA, for appellee.

Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and HALL and LUTTIG, Circuit Judges.

Affirmed by published opinion. Judge HALL announced the judgment of the court and wrote an opinion, in which Justice POWELL joined with respect to Part III.A. only. Justice POWELL wrote an opinion

concurring in part and concurring in the judgment. Judge LUTTIG wrote an opinion concurring in the judgment.

## OPINION

K.K. HALL, Circuit Judge, announcing and concurring in the judgment:

For the reasons stated in Part III–A of this opinion, the judgment of the district court is affirmed. I write separately to explain that I cannot join Judge Luttig's opinion because it is not, in my view, faithful to the controlling precedents of this court.

### I.

This circuit has battled the Secretary for many years over how to evaluate a disability claimant's subjective complaints of pain. Though a subjective allegation of pain, standing all alone, "shall not be conclusive evidence of disability,"[1] where the claimant proves the existence of a medical condition that could cause pain, the claimant's subjective complaints must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence. *Jenkins v. Sullivan,* 906 F.2d 107, 108 (4th Cir.1990); *Hyatt v. Sullivan,* 899 F.2d 329 (4th Cir.1990) [*Hyatt III*]; *Walker v. Bowen,* 889 F.2d 47 (4th Cir.1989); *Foster v. Heckler,* 780 F.2d 1125 (4th Cir.1986); *Myers v. Califano,* 611 F.2d 980 (4th Cir. 1980). The Secretary's refusal to follow this circuit's precedents has cost the government hundreds of thousands of dollars in attorneys' fees. *E.g., Hyatt v. Shalala,* 6 F.3d 250 (4th Cir.1993) [*Hyatt IV*]; *Thompson v. Sullivan,* 980 F.2d 280 (4th Cir.1992). Today, with the battle all but won, Judge Luttig would surrender the field.

In *Hyatt III,* we ordered the Secretary to apply this comprehensive standard (899 F.2d at 337):

Once an underlying physical or mental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling ef-

---

1. 42 U.S.C. § 423(d)(5)(A).

fects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of producing pain is shown, subjective evidence of the pain can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (*i.e.*, manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

Rather than hew to this comprehensive, controlling standard, Judge Luttig has isolated a single snippet from the statute, regulation, and our cases—there must be objective evidence showing the existence of a medical impairment that could reasonably be expected to produce "the pain alleged"—and has interpreted it to mean "the [degree of] pain alleged." On the contrary, I interpret it, as this circuit consistently has, to simply require a causal connection between the pain and the objectively diagnosed medical condition.[2] *E.g., Hyatt v. Heckler,* 807 F.2d 376, 379 (4th Cir.1986) [*Hyatt II*] ("administrative law judges should evaluate the effect of pain on the claimant's ability to work when the pain *results from a medically diagnosed physical ailment* even though the pain's intensity is shown *only* by subjective evidence" (emphasis added)), *cert. denied,* 484 U.S. 820, 108 S.Ct. 79, 98 L.Ed.2d 41 (1987). In other words, objective medical evidence of a peptic ulcer may require an ALJ to weigh the claimant's allegation of stomach pain but not his allegation of constant headaches.

In *Foster,* so heavily relied on by Judge Luttig, we specifically rejected his position (780 F.2d at 1129):

> The district court affirmed the ALJ's decision, reasoning that the treating physician failed to make a *specific* finding that Foster's physical condition would result in the *degree* of pain alleged. These holdings, requiring that there be a direct tie between objective medical findings and a specific level of pain, go beyond the pain standard.

Judge Luttig would require the "direct tie" between the degree of pain and objective medical findings we eschewed in *Foster.* I believe that this analysis is wrong, and, even if I did not, I believe that relying upon it to uphold the Secretary's decision would overstep the strictures placed on a panel by the binding precedents of our court.

## II.

In this case, the ALJ first denied benefits based on SSR 88–13, which this court declared invalid because it adhered to the Secretary's discredited standard. *Hyatt III,* 899 F.2d at 336. The Appeals Council remanded, directing the ALJ to reconsider Mickles' subjective complaints of pain under this circuit's law. On remand, the ALJ did not cite any law, case, or regulation to explain how he was evaluating pain. He found that Mickles' testimony of disabling pain was not credible:

> With regard to her joint pain, peptic ulcer and gastrointestinal disease, and headaches, the claimant's testimony alleges pain and symptoms, which if accepted as credible would be of disabling proportion. However, with regard to these three conditions, the claimant's allegations of pain and symptoms are found not to be credible. First, with regard to all three of these

---

**2.** For example, in *Hyatt III,* 899 F.2d at 334, we disapproved the italicized language in POMS § DI 24501.025:

> *Objective clinical findings* which can be used to draw reasonable conclusions about the validity of the *intensity and persistence of the symptom* and about its effect of the individual's work capacity *must be present.* For example, in cases of back pain associated with disc disease, typical associated findings are muscle spasm, sensory loss, motor loss, and atrophy. There

*must be an objective basis* to support the overall evaluation of impairment severity. *It is not sufficient to merely establish a diagnosis or a source for the symptoms.*

Thus, it *is* sufficient merely to establish a source for the pain, and it *is not* necessary to have objective evidence of the degree of pain or even objective evidence from which one could draw "reasonable conclusions" about the degree of pain.

conditions, as previously discussed, the objective medical evidence does not reflect conditions of such severity. While the medical evidence does support a finding that the claimant has a severe impairment with regard to joint pain, peptic ulcer and gastrointestinal disease, and headaches, it does not support a finding of a condition creating symptoms of such severity as those testified to by the claimant.

Mickles argues that this reasoning, though couched as an attack on the credibility of her subjective complaints, is really just a thinly veiled resurrection of the Secretary's practice of requiring objective proof of the severity of pain. I agree with Mickles. There is no practical difference between requiring a claimant to prove pain through objective evidence and rejecting her subjective evidence because it is not corroborated by objective evidence.

### III.

#### A.

On the other hand, the ALJ did not just rest on the absence of objective proof of pain. In an extended, comprehensive discussion, he cited many additional reasons, all derived from the circumstances of Mickles' everyday life, for finding her testimony not credible:

(1) Mickles said that her stomach pain was so bad that she had trouble eating, but the record showed that she is well-nourished and has not lost weight over the years.

(2) Mickles had not seen a doctor for over a year for her supposedly constant joint pain, and had made only one trip to the emergency room for her tension headaches.

(3) Mickles used only relatively mild over-the-counter medication for her joint pain, and no medication at all for headaches.

(4) An August, 1990, clinic report showed that Mickles complained of having headaches only once every three weeks or month, and that she controlled them by taking Fiorinal and lying down. The ALJ wondered aloud why Mickles would stop taking the Fiorinal if her headache problem had intensified to a constant condition.

(5) The only "medication" Mickles takes for her ulcers is Rolaids.

(6) Her acute bouts with ulcers have been episodic, and she has always responded quickly to treatment.

(7) She does a wide range of housework.

#### B.

This refreshing mode of analysis is precisely what I believe our cases have been striving for. The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life. *See Hunter v. Sullivan,* 993 F.2d 31 (4th Cir. 1992) (claimant's failure to fill prescription for painkiller, which itself was indicated for only mild pain, and failure to follow medical and physical therapy regimen supported ALJ's inference that claimant's pain was not as severe as he asserted).

Because the ALJ conducted the proper analysis in a comprehensive fashion and cited substantial evidence to support his finding, and because there is no question but that he would have reached the same result notwithstanding his initial error, I would affirm. I therefore concur in the judgment.

The judgment is affirmed.

*AFFIRMED.*

POWELL, Associate Justice, concurring in part and concurring in the judgment:

The only question we must decide is whether substantial evidence supports the Secretary of Health and Human Services's finding that Mickles is not disabled. *Hunter v. Sullivan,* 993 F.2d 31, 35 (4th Cir.1992) (per curiam) (citing 42 U.S.C. § 405(g); *Coffman v. Bowen,* 829 F.2d 514, 517 (4th Cir. 1987)). Appellant Mickles principally claims that the Administrative Law Judge ("ALJ"), in making his finding, improperly relied upon a lack of objective medical evidence to discredit her allegations respecting the severity of her pain. Even assuming that appellant is correct, the ALJ properly relied on other evidence, as noted by Judge Hall, that amply supports his decision. For this reason, I concur in part and concur in the judgment.

LUTTIG, Circuit Judge, concurring in the judgment:

Nannie Mickles appeals from a judgment of the district court upholding the determination of the Secretary of Health and Human Services that she was ineligible for Supplemental Security Income. Because I conclude that the administrative law judge applied the correct legal standard for evaluating Mickles' claims of disabling pain and that substantial evidence supported his decision to deny benefits, I would affirm the district court's judgment.

## I.

On August 31, 1988, Nannie Mickles applied for Supplemental Security Income (SSI) under Title XVI of the Social Security Act as amended, 42 U.S.C. § 1381 *et seq.*, claiming that she had been disabled since June 1984 due to a number of medical conditions, including generalized joint pain, pain in her left foot, epigastric problems, headaches, hearing loss, shortness of breath, and emotional problems. She claimed that the pain she suffered due to these afflictions was such that she was prevented from performing any work in the national economy.

After her application was denied initially and again on reconsideration, her case was referred to an administrative law judge. The ALJ conducted two hearings, during which he received testimony from Mickles and from a vocational expert. Mickles was represented by counsel at both hearings. After considering the medical evidence and the testimony, particularly Mickles' own description of her daily activities, the ALJ denied her claim on October 4, 1989, finding that although her physical and mental conditions restricted her ability to perform certain types of work, Mickles was nonetheless capable of successfully performing a significant number of jobs.

The Appeals Council, finding that the ALJ had not sufficiently considered Mickles' claims of constant, disabling pain, particularly those of abdominal pain, remanded with instructions to evaluate her claims in accordance with *Foster v. Heckler*, 780 F.2d 1125 (4th Cir.1986). The Council also instructed the ALJ not to cite S.S.R. 88–13 (1988), which had been rescinded by this court in *Hyatt v. Sullivan*, 899 F.2d 329, 336 (4th Cir.1990), and had been superseded by S.S.R. .90–1p (1990) just before the Council announced its decision.

The ALJ then held a third hearing on December 3, 1990, at which both Mickles and her husband testified. Mickles stated that she suffered constant joint pain so severe that she could not sit or stand for more than a few minutes at a time, constant abdominal pain which was exacerbated whenever she ate, and severe headaches daily. She also reported that she had become much less active since her previous hearing and that her husband now performed almost all of the housework. With some inconsistencies, her husband corroborated this testimony.

On January 21, 1992, the ALJ again denied Mickles' claim for SSI benefits, finding that despite her impairments, she remained able to perform certain types of sedentary work. While giving some credence to Mickles' claims in assessing her ability to work, he found that her allegations of constant pain of disabling proportions were not credible. The ALJ's conclusion rested on four findings. First, Mickles' underlying medical conditions were unlikely to produce pain of the severity and frequency she claimed. Second, her claims were inconsistent with the level and type of medical treatment she reported having received. Third, her claims were inconsistent with her medical records and the testimony of her husband, both of which indicated that her pain occurred with less frequency than she claimed. Fourth, although she testified that her activities had been curtailed significantly since the ALJ's earlier decision, she continued to perform limited housework.

On September 11, 1992, the Appeals Council denied review, rendering the ALJ's determination the final decision of the Secretary. Mickles then filed suit in the district court for review of the Secretary's decision. The district court adopted the magistrate's report and entered summary judgment for the Secretary, and this appeal followed.

## II.

Under the Social Security Act, we must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard. 42 U.S.C. §§ 405(g), 1383(c)(3); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir.1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938)); "[i]t consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). In reviewing for substantial evidence, we do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the Secretary. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir.1990). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir.1987). The issue before us, therefore, is not whether Mickles is disabled, but whether the ALJ's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Coffman*, 829 F.2d at 517.[1]

### A.

Mickles' principal contention on appeal is that the ALJ disregarded the law in evaluating her subjective complaints of pain. The ALJ held that Mickles' claims of constant, disabling pain could not be accepted as establishing disability, in part because the medical evidence in the record did not show the existence of physical or mental impairments reasonably likely to cause pain of the severity and frequency she alleged. Mickles argues that the ALJ improperly considered objective medical evidence in evaluating the credibility of her testimony concerning her pain, which, she asserts, is an inherently subjective phenomenon.

A person is "disabled" under the Social Security Act, and therefore potentially eligible for SSI benefits if she is "unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *cf. id.* § 423(d)(1)(A).[2] A "physical or mental impairment" is further defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically accepted clinical and laboratory diagnostic techniques." *Id.* § 1382c(a)(3)(C); *cf. id.* § 423(d)(3). Thus, for disability to be found, an underlying medically determinable impairment resulting from some demonstrable abnormality must be established. While the pain caused by an impairment, independent from any physical limitations imposed by that impairment, may of course render an individual incapable of working, *see Myers v. Califano*, 611 F.2d 980, 983 (4th Cir.1980), allegations of pain and other subjective symptoms, without more, are insufficient. As we said in *Gross v. Heckler*, "[p]ain is not disabling *per se*, and subjective evidence of pain cannot take precedence over objective medical evidence or

1. Justice Powell would decide this case solely on whether there was substantial evidence supporting the ALJ's finding that Mickles was not disabled by pain. *See ante* at 921. He thus would not decide the principal issue on appeal, which is whether the ALJ applied the proper legal standard in making his determination.

2. The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 *et seq.*, provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, *id.* § 1381 *et seq.*, provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, *see* 20 C.F.R. pt. 404 (SSDI); *id.* pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical. *See also Bowen v. City of New York*, 476 U.S. 467, 469–470, 106 S.Ct. 2022, 2024–25, 90 L.Ed.2d 462 (1986).

the lack thereof." 785 F.2d 1163, 1166 (4th Cir.1986) (quoting *Parris v. Heckler*, 733 F.2d 324, 327 (4th Cir.1984)). *See also* 20 C.F.R. § 416.928(a) (1993) (a claimant's "statements alone are not enough to establish that there is a physical or mental impairment."); *cf. id.* § 404.1528(a) (same).

In order to make this statutory requirement even more plain, Congress in 1984 amended Title II of the Social Security Act, purportedly to codify the regulatory standard for evaluating pain. *See* S.Rep. No. 466, 98th Cong., 2d Sess. 23–24 (1984); H.R. Conf. Rep. No. 1039, 98th Cong., 2d Sess. 29 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3038, 3080, 3087–88. The amendment, in language which closely paralleled the Secretary's 1980 regulations, *see* 20 C.F.R. §§ 416.929, 404.-1529 (1983), provided:

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; *there must be medical signs and findings,* established by medically acceptable clinical or laboratory diagnostic techniques, *which show the existence of a medical impairment* that results from anatomical, physiological, or psychological abnormalities *which could reasonably be expected to produce the pain or other symptoms alleged* and which, when considered with all the evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory

diagnostic techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.

42 U.S.C. § 423(d)(5)(A) (emphasis added). This standard was made applicable to SSI determinations as well by an amendment to Title XVI incorporating section 423(d)(5) by reference. *See* 42 U.S.C. § 1382c(a)(3)(G).

Interpreting section 423(d)(5)(A), this court held that in order for pain to be found disabling, there must be objective medical evidence establishing some condition that could reasonably be expected to produce the pain alleged. *Foster v. Heckler*, 780 F.2d 1125, 1129 (4th Cir.1986).[3] However, while a claimant must show by objective evidence the existence of an underlying impairment that could cause the pain alleged, "there need not be objective evidence of the pain itself." *Id.* (*quoting Green v. Schweiker*, 749 F.2d 1066, 1070–71 (3d Cir.1984)). *Accord Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir.1990) (section 423(d)(5)(A) requires "a claimant to show objective medical evidence of some condition that could reasonably be expected to produce the pain alleged, not objective evidence of the pain itself"); *Hyatt III*, 899 F.2d at 332 (statute "requires objective medical evidence of an underlying condition that could reasonably produce the pain alleged"); *Hatcher v. Secretary, Health & Human Services*, 898 F.2d 21, 24 (4th Cir.1989) ("§ 423(d)(5)(A) ... requires medical evidence of an impairment which could reasonably be expected to produce the pain or other symptoms alleged."); *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir.1989) ("[W]hile there must be medical evidence of some condition that could reasonably produce the pain, there need not be objective evidence of the pain

---

**3.** In *Foster*, we also found that § 423(d)(5)(A) was consistent with our prior precedents. *Id.* at 1129 n. 7. *See also Thompson v. Sullivan*, 980 F.2d 280, 282 (4th Cir.1992) ("[§ 423(d)(5)(A)] adopted the substance of our prior rule"); *Hyatt v. Sullivan*, 899 F.2d 329, 333 n. 4 (4th Cir.1990) (*Hyatt III*) ("[§ 423(d)(5)(A)] and Fourth Circuit pain law are not inconsistent"); *compare Shively v. Heckler*, 739 F.2d 987, 990 (4th Cir.1984) *with* § 423(d)(5)(A). One of those prior precedents, *Myers*, could be read to be in conflict with § 423(d)(5)(A)'s requirement of objective proof of an underlying impairment which could reason-

ably be expected to cause the disabling pain a claimant alleges, *see* 611 F.2d at 983, and has at least once been so read, *see Thompson*, 980 F.2d at 283 (characterizing *Myers* as holding "that pain itself is an impairment that can render a person disabled"). However, given the rather plain requirements expressed in the statutory language, the terms of which have since been incorporated into the governing regulations, and our consistent interpretation of those terms, we have previously declined to so construe *Myers*, *see, e.g., Foster*, 780 F.2d at 1129 n. 7, and I would again decline to do so today.

itself or its intensity."); *Gross,* 785 F.2d at 1166 (upholding denial of benefits where evidence failed to show any abnormality which would explain claimant's pains). Under these cases, once objective medical evidence establishes a condition which could reasonably be expected to cause pain of the severity a claimant alleges, those allegations may not be discredited simply because they are not confirmed by objective evidence of the severity of the pain, such as heat, swelling, redness, and effusion. *See Jenkins,* 906 F.2d at 109.

Although it still appears in the statutory codification and decisions have continued to be rendered under it, *see, e.g., Jenkins,* 906 F.2d at 108, section 423(d)(5)(A) is applicable only to SSDI and SSI eligibility determinations made prior to January 1, 1987. *See* Social Security Disability Benefits Reform Act of 1984, Pub.L. No. 98–460, § 3(a)(3), 98 Stat. 1794, 1799 (1984); *see also Hyatt III,* 899 F.2d at 332 n. 1. The statute is thus no longer effective, but its standard for the evaluation of pain has recently been incorporated almost *in haec verba* into the Social Security regulations.

On November 14, 1991, the Secretary, acting pursuant to the rulemaking authority delegated by Congress in 42 U.S.C. § 1302, substantially revised the regulations governing the evaluation of pain in SSDI and SSI disability determinations. *See* 20 C.F.R. §§ 404.1529, 416.929 (1993). These regulations provide the authoritative standard for the evaluation of pain in disability determinations, *see Pope v. Shalala,* 998 F.2d 473, 485–86 (7th Cir.1993), and control all determinations made since their effective date, including the instant case.

Section 416.929, governing SSI disability determinations, incorporates the standard set forth in section 423(d)(5)(A) and explains that standard with more than three and one half pages of small type. This lengthy regulation begins by emphasizing the importance of objective evidence in determining whether a claimant is disabled by pain:

In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consis-

tent with the objective medical evidence and other evidence.... However, statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which establish that you have a medical impairment(s) which could reasonably produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled. In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings and statements about how your symptoms affect you.... *We will then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work....*

20 C.F.R. § 416.929(a) (emphasis added).

Under this regulation, the determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing

the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and *which could reasonably be expected to produce the pain or other symptoms alleged.*

§ 416.929(b) (emphasis added). *Compare* § 423(d)(5)(A) ("there must be medical signs and findings ... which show the existence of a medical impairment ... which could reasonably be expected to produce the pain or other symptoms alleged"). It is significant that the regulation, like the statute upon which it was based, *see* § 423(d)(5)(A), and paralleling the regulation which that statute purported to codify, *see* 20 C.F.R. § 416.929 (1983), was drafted using the definite article

"the" and the adjective "alleged."[4] Therefore, for pain to be found to be disabling, there *must* be shown a medically determinable impairment which could reasonably be expected to cause not just pain, or some pain, or pain of some kind or severity, but *the pain the claimant alleges she suffers*. The regulation thus requires at the threshold a showing by objective evidence of the existence of a medical impairment "which could reasonably be expected to produce" the actual pain, in the amount and degree, alleged by the claimant. *Cf. Jenkins*, 906 F.2d at 108 (statute requires "objective medical evidence of some condition that could reasonably be expected to produce the pain alleged"); *Foster*, 780 F.2d at 1129 (same).

This threshold test does not, as the regulation is careful to emphasize, entail a determination of the "intensity, persistence, or functionally limiting effects of the claimant's asserted pain." *See* § 416.929(b). At this stage of the inquiry, the pain claimed is not directly at issue; the focus is instead on establishing a determinable underlying impairment—a statutory requirement for entitlement to benefits, *see* § 1382c(a)(3)(A)—which could reasonably be expected to be the cause of the disabling pain asserted by the claimant.

Judge Hall's consignment of the operative language of the regulation to irrelevancy, *see ante* at 920 and *supra* note 4, is attributable to his failure to acknowledge the fundamental difference between objective evidence of pain (which is not required) and objective evidence of a medical condition which could cause the pain alleged (which is). *See ante* at 921 ("There is no practical difference between requiring a claimant to prove pain through objective evidence and rejecting her subjective evidence because it is not corroborated by objective evidence.") The former is obviously not the law, and it is not for the simple reason that pain, a subjective phenomenon, may sometimes be objectively verifiable, but often it will not be. Objective evidence of the pain the claimant feels is thus, quite sensibly, *not* required for entitlement to benefits. § 416.929(c). However, the latter—objective evidence of a condition "which could reasonably be expected to produce the pain or other symptoms alleged"— equally sensibly, *is* required by the Secretary's regulation, § 416.929(b).

Indeed, that such a requirement is part of the regulatory scheme is confirmed by the portions of the regulation providing that, in the disability hearing process, before the ALJ, and before Appeals Council, expert medical advice may be sought and considered in determining whether an "impairment[ ] could reasonably be expected to produce [the claimant's] alleged symptoms," *id.*

In effect, thus, Judge Hall would simply jettison the first part of the two-part test which the validly promulgated regulations prescribe, thereby relieving a claimant of her threshold obligation that she show by objective medical evidence a condition which could plausibly produce the pain she claims she suffers.

It is only *after* a medical impairment reasonably likely to cause the pain claimed is shown by medical signs and findings that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated. *See*

---

4. Judge Hall characterizes this language from the regulation (and our prior caselaw) as an irrelevant "snippet." *See ante* at 920 ("Judge Luttig has isolated a single snippet from the statute, regulation, and our cases."). Of course, it is anything but that. It is, indeed, the relevant language of the controlling law which we are obliged to interpret in this case. *Compare ante* at 919 ("where the claimant proves the existence of a condition *that could cause pain*, the claimant's subjective complaints must be considered by the Secretary") (citing *Jenkins*, 906 F.2d at 108) (emphasis added) *with* 20 C.F.R. § 416.929(a) ("Your symptoms ... will not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present. Medical signs and laboratory findings ... must show the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and *which could reasonably be expected to produce the pain or other symptoms alleged*." (emphasis added)) *and, e.g., Jenkins*, 906 F.2d at 108 ("[T]his court has interpreted [§ 423(d)(5)(A)] as requiring a claimant to show objective medical evidence of some condition *that could reasonably be expected to produce the pain alleged*, not objective evidence of the pain itself." (emphasis added)). Even if our precedents were contrary to this regulation, which they are not, this regulation would be controlling. *See Pope*, 998 F.2d at 485–86.

§ 416.929(c)(1). Under the regulation, this evaluation must take into account not only the claimant's statements about her pain, but also "all the available evidence," including the claimant's medical history, medical signs and laboratory findings, *see id.*, any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), *see* § 416.-929(c)(2), and any other evidence relevant to the severity of the impairment such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it, *see* § 416.-929(c)(3).

The regulation, as did the statute, *see* § 423(d)(5)(A) ("[o]bjective medical evidence of pain or other symptoms ... must be considered"), specifically provides for the consideration of objective medical evidence of the pain (if any such evidence exists) in the evaluation of its intensity and persistence. However, because pain is subjective and cannot always be confirmed by objective indicia, claims of disabling pain may not be rejected "*solely* because the available objective evidence does not substantiate [the claimant's] statements" as to the severity and persistence of her pain. § 416.929(c)(2) (emphasis added). *See also Walker*, 889 F.2d at 49 ("there need not be objective evidence of the pain itself or its intensity"); *Foster*, 780 F.2d at 1129 (same). That is, once a medically determinable impairment which could reasonably be expected to produce the pain alleged by the claimant is shown by objective evidence, the claimant's allegations as to the severity and persistence of her pain may not be dismissed merely because objective evidence of the pain itself (as opposed to the existence of an impairment that could produce the pain alleged), such as inflamed tissues or spasming muscles, are not present to corroborate the existence of pain.

This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work. They most certainly are. Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers:

> We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled. We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your medical history, the medical signs and laboratory findings, and statements by your treating or examining physician or psychologist or other persons about how your symptoms affect you. *Your symptoms, including pain, will be determined to diminish your capacity for basic work activities ... to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence.*

§ 416.929(c)(4) (emphasis added). *Compare* § 423(d)(5)(A) ("there must be ... a medical impairment ... which, when considered with all the evidence ... (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability"). *See also Gross*, 785 F.2d at 1166 (allegations of pain properly found incredible where medical evidence did not show an underlying impairment); *Shively v. Heckler*, 739 F.2d 987, 990 (4th Cir.1984) (same; pre-statute).[5]

---

**5.** Judge Hall would expurgate this relevant language from the second part of the regulation's two-part test as well as from the first, *see ante* at

920–21 [Part II], also in direct contravention of the controlling regulations.

The ALJ thus did not ignore the law by examining whether the objective medical evidence established impairments which could be expected to cause pain of the severity and constancy Mickles claimed, or by discounting her claims to the extent they were inconsistent with that medical evidence. Contrary to Mickles' contention, the ALJ did not discount her claims because of a lack of medical evidence confirming the severity of her pain, but, rather, because of a lack of evidence of an impairment reasonably likely to cause pain of the magnitude and constancy that she alleged she suffered.[6] The ALJ thus appears to have performed precisely the analysis contemplated by section 416.929, in assiduous adherence to the law.

We next must determine whether the ALJ's finding that Mickles' claims were not credible, in part because the medical evidence did not establish an impairment which could reasonably be expected to cause the pain she alleged, was supported by substantial evidence. Reviewing the record as a whole, I conclude that there was substantial evidence to support this conclusion.

Mickles' medical records show that she has been examined by at least four doctors and has undergone extensive diagnostic testing, including x-rays, a CAT scan, ultrasound examinations, an electromyogram, a nerve conduction study, upper gastrointestinal studies, serological tests, and a bone scan. However, other than showing that she has a history of peptic ulcer disease and occasional bouts of gastroenteritis, has some hearing loss and suffers from recurring ear infections, and

had once broken a bone in her left foot, the results of these examinations and tests were essentially normal and established only medical conditions which could not reasonably be expected to produce pain of the severity and persistence she alleged.

Mickles has been evaluated by three doctors specifically for pain in her back and left foot, none of whom was able to diagnose an underlying impairment. Dr. Saraiya, who examined Mickles in 1988, was unable to identify a cause for her pain after an electromyogram, a nerve conduction study, and a CAT scan all produced normal results. R. at 181–85. Dr. Bachman, an orthopedist who examined Mickles in 1989, found no abnormalities except for a very slight limp and mild tenderness in the left ankle and lower back, *id.* at 252–53, and read her x-rays as normal, revealing no disorder in her back or left foot, *id.* at 253, 294. Based on this, he opined that Mickles suffered from "no particular disorder involving the back" and that the pain in her left foot was "difficult to explain," although he speculated, without confirmation, that it might have been "some peripheral nerve injury syndrome." *Id.* at 252–53. A month later, Dr. Udupa also examined Mickles and ordered a number of tests, including a bone scan and serological tests for arthritis. The results of the tests were negative, and Dr. Udupa concluded he was unable to determine an etiology of her pain. *Id.* at 331.

Dr. Senter had treated Mickles since early 1984 for a variety of ailments, including tension headaches. However, he never diag-

---

6. The ALJ wrote in explanation of his finding as to Mickles' alleged pain:

> With regard to her joint pain, peptic ulcer and gastrointestinal disease, and headaches ... the claimant's allegations of pain and symptoms are found to not be credible. First, with regard to all three of these conditions, as previously discussed, the objective medical evidence does not reflect conditions of such severity. While the medical evidence does support a finding that the claimant has a severe impairment with regard to joint pain, peptic ulcer and gastrointestinal disease, and headaches, it does not support a finding of a condition creating symptoms of such severity as those testified to by the claimant. The medical evidence reflects that the claimant does suffer from joint pain but does not reveal findings of significant

> musculoskeletal abnormalities likely to create pain of disabling severity. Likewise, the record reflects that the claimant suffers from tension headaches, but does not reflect any physical finding likely to create symptoms of the severity testified to by the claimant with regard to her headaches. Finally, while the record reflects that the claimant does suffer from peptic ulcer disease and gastrointestinal difficulties and has had to be hospitalized on several occasions for these complaints, the record also reflects that this condition is episodic in nature, responds rapidly to treatment upon hospitalization, and that on each occasion the claimant has after a short period of time been noted to have considerably improved and [been] discharged from the hospital.
> J.A. at 7–8.

nosed an underlying cause for Mickles' headaches or found them serious enough to order any diagnostic tests. His most recent notations in her medical records indicate that Mickles, although experiencing recurring ear infections and some temporomandibular joint dysfunction, was generally "doing well," *e.g., id.* at 322–23, or "in no acute distress," *e.g., id.* at 326–27, and had reported to him that she suffered from headaches only once every three weeks or a month, *id.* at 325–26.

Mickles' medical records show that she has a history of peptic ulcers, *see id.* 186, 252, and suffered from bouts of viral gastroenteritis, *see id.* at 267, 277, 281, 288, 330, 336, which once required hospitalization for three days, *id.* at 298–303. But these problems were episodic and appear to have responded quickly to treatment. Moreover, other than showing mildly dilated small bowel loops on one occasion, *see id.* at 337, Mickles' x-rays, ultrasound examinations, and upper gastrointestinal studies consistently failed to show any significant gastrointestinal abnormalities, *see id.* at 290, 301–02, 330.

Subject only to the substantial evidence requirement, it is the province of the Secretary, and not the courts, to make credibility

determinations and to resolve ambiguities in the evidence. As there is substantial evidence in this record supporting the ALJ's conclusion that Mickles' claims were inconsistent with her medical history and with the underlying impairments demonstrated by the medical evidence, I would uphold the ALJ's credibility determination and corresponding finding that Mickles was not legally disabled.[7]

### B.

In evaluating Mickles' claims of disabling pain, the ALJ considered, *inter alia,* the level and type of medical treatment she reported receiving for her ailments. His finding that the treatment she received was inconsistent with her claims of constant, disabling pain was one factor supporting his conclusion that her claims were not credible.[8] Mickles argues that it was improper to discredit her testimony on this basis because she was indigent and unable to afford the level of medical treatment which would have been consistent with the pain she alleged. *See Lovejoy v. Heckler,* 790 F.2d 1114, 1117 (4th Cir.1986) (in evaluating allegations of disabling pain, "a claimant may not be penal-

7. It has also been suggested that the ALJ's reliance on the vocational expert's opinion that there were a variety of sedentary jobs Mickles was able to perform cannot be sustained because of defects in the hypothetical question posed to the expert. We disagree. The record discloses that all of the exertional and non-exertional limitations which the ALJ found to exist, *see* J.A. at 6, were included in the hypothetical, *see* R. at 99–101. Although the expert testified when examined by Mickles' attorney that Mickles could not hold a job if her functional capacity were restricted by pain to the extent she alleged, *see id.* at 101–04, the ALJ found those allegations to be incredible. As that finding was supported by substantial evidence, so too was his finding that Mickles was capable of performing sedentary work and therefore not disabled under 20 C.F.R. § 416.920(f)(1).

8. In support of his finding that Mickles' treatment was inconsistent with the pain alleged, the ALJ explained:

> With regard to the claimant's joint pain she noted at the supplemental post-remand hearing, that she had not seen a doctor for this condition in excess of a year prior to the hearing. [*See* R. at 111.] This level of treatment is not indicative of a condition of the severity

testified to by the claimant. Likewise, the claimant's pain medication, which appears to have involved Tylenol and PA, [*see id.* at 110, 295,] does not seem consistent with the incapacitating pain alleged by the claimant. With regard to the claimant's headaches, again the level of treatment, which appears to consist of one trip to the emergency room, [*see id.* at 287,] does not appear commensurate with the severity of symptoms testified to. Likewise, claimant noted at the hearing that she takes no medication for her headaches, [*see, id.* at 115–16,] which is again inconsistent with a finding of great severity.... This report also notes that upon taking Fiorinal and laying down in a dark room, her headache goes away. [*See* R. at 326–27.] This would indicate that apparently at one time, the claimant was taking Fiorinal for her headache condition and no explanation has been made as to why she ceased this medication if it was helpful to her.

> ... The claimant testified at the hearing that the only medication she takes for her allegedly severe peptic ulcer disease and gastroenteritis are Rolaids. [*See* R. at 113.] It seems inconceivable that for a condition of the severity and constancy described by the claimant, that more substantial medication would not have been attempted in order to alleviate the condition. J.A. at 8–9.

ized for failing to seek treatment she cannot afford"); *Dover v. Bowen*, 784 F.2d 335, 337 (8th Cir.1986). *Cf. Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir.1984) (refusal to follow prescribed treatment did not preclude finding of disability where claimant could not afford treatment); *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir.1988).

The regulations specifically provide that in evaluating the intensity and extent of pain, consideration must be given to the medication and medical treatment a claimant receives to alleviate her symptoms as well as any other measures or "home remedies" a claimant uses to relieve her symptoms. *See* 20 C.F.R. § 416.929(c)(3)(iv)–(vi). *See also* S.S.R. 90–1p at 4. While a claimant's failure to obtain medical treatment that she cannot afford cannot justify an inference that her condition was not as serious as she alleges, *see Lovejoy*, 790 F.2d at 1117, an unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the claimant's credibility. *See* 20 C.F.R. § 416.929(c)(4); *see also Dover*, 784 F.2d at 337. Thus, contrary to Mickles' assertions, it was not improper for the ALJ to consider the level and type of treatment Mickles sought and obtained in determining what weight to accord her allegations of constant disabling pain.

The question then becomes whether there is substantial evidence in the record as a whole to support the ALJ's implicit finding that treatment more consistent with the severity of pain which Mickles claimed was available to her. I find that there is ample evidence to support such a finding. Mickles' medical records show that she had considerable access to medical attention and little difficulty in obtaining medication. *See* R. at 165–239, 262–94, 298–337. In 1990 alone, she made at least 17 visits to her physician and to the Dickenson County Medical Center Emergency Department. The bulk of these visits appear to have been for recurring ear infections and resulting complications, although she also received treatment for sever-

al other ailments, including a case of acute viral gastroenteritis that required hospitalization for three days and a bout of acute bronchitis that required a night in the hospital. In 1989, she was seen by a doctor at least 24 times, again for a wide variety of ailments. Her records also reveal that on most of these occasions she was prescribed and *dispensed* medication. For example, in February 1990 on the only occasion in 1990 on which Mickles reported back pain to her physician, she was given a two-day supply of Tylenol # 3 (containing codeine) for what Dr. Senter diagnosed as "non-specific back pain." *See id.* at 326. Similarly, when she complained of tension headaches, the records reflect that Dr. Senter regularly dispensed Fiorinal.[9] *See, e.g., id.* at 325–26. Although there is evidence in the record that Mickles did not have insurance to pay for a specialist to whom her doctor had wanted to refer her, *id.* at 112, and that in November 1991 she told her psychologist, who was treating her with medication, that she could not afford certain medication apparently prescribed by Dr. Senter, *id.* at 15, the overwhelming weight of the record evidence shows that in the relevant period Mickles had considerable access to both medical treatment and medication. Unlike in *Lovejoy*, in which it was uncontradicted that the claimant could not afford certain specified treatment, *see* 790 F.2d at 1117, the record here includes substantial evidence supporting a finding that medical care more consistent with the alleged severity of Mickles' conditions was available to her. The ALJ thus did not err by considering the inconsistency between her level of treatment and her claims of disabling pain as one factor supporting his conclusion that her claims were not credible.

For the foregoing reasons, I would affirm the district court's entry of summary judgment for the Secretary.

---

9. The *Physician's Desk Reference* describes Fiorinal as an analgesic for the treatment of tension headaches, which contains aspirin, caffeine, and a relatively low dosage of butalbital, a short-to

intermediate-acting barbiturate with muscle relaxing properties. *Physician's Desk Reference* 2052 (48th ed.1994).