59 F.3d 165
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Russell COLVARD, Plaintiff-Appellant,
v.
Shirley S. CHATER, Commissioner of Social Security,
Defendant-Appellee.
 No. 94-1457.
 United States Court of Appeals, Fourth Circuit.
 Submitted June 8, 1995.
Decided June 21, 1995.
 
 Appeal from the United States District Court for the Western District of Virginia, at Big Stone Gap. Glen M. Williams, Senior District Judge. (CA-89-32-B)
 W.D.Va. SY AFFIRMED.
 Joseph E. Wolfe, WOLFE & FARMER, Norton, Virginia, for Appellant.
 Charlotte Hardnett, Chief Counsel, Region III, Dorothea J. Lundelius, Division Chief, Margaret J. Krecke, Assistant Regional Counsel, Office of the General Counsel, DEPARTMENT OF HEALTH AND HUMAN SERVICES, Philadelphia, Pennsylvania; Robert P. Crouch, Jr., United States Attorney, Richard A. Lloret, Assistant United States Attorney, Roanoke, Virginia, for Appellee.
 OPINION
 Before HALL and WILKINSON, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Appellant Russell Colvard appeals the final decision of the Secretary of Health and Human Services ("Secretary") denying his claims for Social Security Benefits. For the reasons discussed below, we find that the Secretary's decision is supported by substantial evidence and affirm the Secretary's ruling.
 
 I.
 
 2
 In April, 1988, Colvard filed claims for disability insurance benefits and supplemental security income pursuant to the Social Security Act, 42 U.S.C. Secs. 401-433 (1988 & Supp. V 1993) and 42 U.S.C. Secs. 1381-1383d (1988 & Supp. V 1993), respectively. After conducting a hearing, the Administrative Law Judge ("ALJ") found no disability under the Act and denied Colvard's claims. The ALJ's decision became the final decision of the Secretary when the Appeals Council refused to review the decision. Colvard then appealed the ALJ's decision to the United States District Court for the Western District of Virginia. On March 26, 1990, the district court remanded the case for "good cause" and ordered the ALJ to further develop the record regarding Colvard's nonexertional limitations. The ALJ held a supplemental hearing on September 10, 1990, during which he heard testimony from Colvard and a vocational expert. Following the hearing, the ALJ issued a written order denying benefits on the grounds that Colvard was not disabled and could perform other jobs in the national economy. Again, the Appeals Council refused to review the ALJ's decision, and it became the final decision of the Secretary on November 21, 1991. Colvard appealed the ALJ's decision to the district court in June, 1993, and the district court affirmed the ALJ's decision, finding that it was supported by substantial evidence. Colvard appeals the district court's ruling.
 
 
 3
 Colvard urges this court to reverse the Secretary's ruling on four grounds of alleged error. First, Colvard contends that the ALJ did not fully develop the record regarding his mental impairment. Second, Colvard argues that the ALJ did not fully develop the record regarding his residual functioning capacity. Third, Colvard contends that the ALJ erred in not relying upon Dr. Nelson's report. Finally, Colvard argues that the ALJ's hypothetical question posed to the vocational expert did not accurately characterize his mental illness.
 
 
 4
 If substantial evidence exists to support the Secretary's finding that Colvard is not disabled, then we must affirm the Secretary's ruling. Mickles v. Shalala, 29 F.3d 918, 923 (4th Cir.1994); 42 U.S.C. Sec. 405(g) (1988). Substantial evidence is evidence that a reasonable person would accept as sufficient to support a particular conclusion. Id. "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir.1966).
 
 II.
 
 5
 First, Colvard contends that the ALJ did not fully develop the record regarding his mental impairment. Colvard notes that Dr. Nelson found him clinically retarded, and that Dr. Hogan's report also supports the existence of a mental impairment. Colvard claims that the ALJ erred in not ordering an Intelligence Quotient ("IQ") test to determine if he suffered from some mental impairment.
 
 
 6
 A review of Dr. Hogan's report reveals that he did not find any mental impairment, and the ALJ chose to accept Dr. Hogan's report rather than Dr. Nelson's report.[1] The ALJ was not required to order an IQ test of Colvard because the claimant bears the burden of putting forth all evidence of his mental impairments. 20 C.F.R. Secs. 404.1512(a), 416.912(a) (1994). Colvard could have elected to take an IQ test at any time during the pendency of these proceedings. Furthermore, the fact that Colvard worked for sixteen years demonstrates that his IQ does not prevent him from working because a per son's IQ generally remains constant, and Colvard has not presented any evidence that some event occurred causing his IQ to diminish.
 
 
 7
 Colvard next argues that the ALJ did not fully develop the record regarding his residual functioning capacity. The ALJ found that Colvard can perform the exertional requirements of light work,[2] and light work usually encompasses the lesser category of sedentary work.[3] Colvard contends that in order to classify him as able to do light work, the ALJ must find that he is able to meet the exertional demands of both light and sedentary work. Colvard argues that the evidence establishes that he is unable to sit for the duration typically required of sedentary work. Colvard also contends that the ALJ erred in not obtaining a form assessing his residual functional capacity from a physician.
 
 
 8
 The determination of a claimant's residual functioning capacity lies with the ALJ, not a physician, and is based upon all relevant evidence. 20 C.F.R. Secs. 404.1545(a), 404.1546, 416.945(a), 416.946 (1994). We find that the Secretary's conclusion that Colvard is able to perform light work is supported by substantial evidence. Even if Colvard could not perform sedentary work, he would still not be disabled because he would be able to perform light work, excluding sedentary work, and he is only disabled if he is not capable of performing any type of work which exists in the national economy. 20 C.F.R. Secs. 404.1505(a), 416.905(a) (1994). If a person can do light work, he or she can also do sedentary work, "unless there are additional factors such as ... inability to sit for long periods of time." 20 C.F.R. Secs. 404.1567(b), 416.967(b) (1994). Therefore, classifying Colvard as capable of performing light work was appropriate, even if he cannot do sedentary work.
 
 
 9
 Next, Colvard argues that the ALJ erred in relying upon Dr. Hogan's report because Dr. Nelson administered the Minnesota Multiphasic Personality Inventory ("MMPI"), and Dr. Hogan did not conduct any formal testing.
 
 
 10
 The ALJ could not reconcile Dr. Nelson's report with Dr. Hogan's report, and because neither physician was Colvard's treating physician, the ALJ was not required to accord more deference to one than the other. We find the ALJ's decision to rely upon Dr. Hogan's report rather than Dr. Nelson's report was not an abuse of discretion because Dr. Hogan's report is consistent with the record as a whole and with Colvard's testimony, while Dr. Nelson's report is contrary to both in many respects. The MMPI testing does not affect the weight accorded to Dr. Nelson's report because Dr. Nelson never interpreted the results in light of Colvard's personality. The MMPI is not like an IQ test where the score directly documents the person's level of intellectual functioning. Rather, the MMPI is merely a diagnostic tool, and its results are not a definitive diagnosis or a psychological profile of an individual. Ann Anastasi, Psychological Testing 500-07 (5th ed.1982).
 
 
 11
 Finally, Colvard argues that the ALJ's hypothetical question posed to the vocational expert did not accurately characterize his mental illness. Colvard claims that the question should have contained a reference that he often experiences deficiencies with concentration, persistence, and pace resulting in failure to complete tasks in a timely manner. The ALJ did indicate on the Psychiatric Review Technique Form that Colvard often experienced deficiencies with concentration, persistence, and pace; however, this statement merely reflects the ALJ's conclusion, and we find that the hypothetical properly included all of the limitations discussed in Dr. Hogan's report.
 
 
 12
 Colvard also contends that the ALJ's question erroneously stated that he was seriously limited, but not precluded from dealing with work stresses because Dr. Hogan's report concluded that he had a moderate to severe Dysthymic Disorder. However, after diagnosing Colvard with moderate to severe Dysthymic Disorder, Dr. Hogan stated that the functional limitation of such a disorder is that Colvard is seriously limited, but not precluded from dealing with work stresses, functioning independently, and understanding and carrying out complex job instructions. Therefore, we find that the ALJ's question properly characterized Colvard as "seriously limited, but not precluded," as opposed to having a moderately severe impairment to deal with work stresses. The ALJ used the exact language used by Dr. Hogan in his report.
 
 
 13
 For the foregoing reasons, we find that the Secretary's decision is supported by substantial evidence and affirm the Secretary's ruling.
 
 AFFIRMED
 
 
 [1]
 The ALJ was entitled to rely upon Dr. Hogan's report instead of Dr. Nelson's report for the reasons discussed below
 
 
 [2]
 The Code of Federal Regulations provides:
 Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm leg controls.
 
 
 [20]
 C.F.R. Secs. 404.1567(b), 416.967(b) (1994)
 
 
 [3]
 The Code of Federal Regulations provides:
 Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.
 
 
 [20]
 C.F.R. Secs. 404.1567(a), 416.967(a) (1994)