68 F.3d 461
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Lewis D. SHREWSBURY, Plaintiff-Appellant,
v.
Shirley S. CHATER, Commissioner of Social Security,
Defendant-Appellee.
 No. 94-2235.
 United States Court of Appeals, Fourth Circuit.
 Argued May 2, 1995.
Decided Oct. 6, 1995.
 
 ARGUED: John Simon Whitelaw, APPALACHIAN RESEARCH AND DEFENSE FUND, INC., Beckley, West Virginia, for Appellant. Robert S. Drum, Assistant Regional Counsel, Office of the General Counsel, DEPARTMENT OF HEALTH & HUMAN SERVICES, Philadelphia, Pennsylvania, for Appellee. ON BRIEF: Charlotte Hardnett, Chief Counsel, Region III, Javier Arrastia, Division Chief, Office of the General Counsel, DEPARTMENT OF HEALTH & HUMAN SERVICES, Philadelphia, Pennsylvania; Rebecca A. Betts, United States Attorney, Carol A. Casto, Assistant United States Attorney, Charleston, West Virginia, for Appellee.
 Before MURNAGHAN and MOTZ, Circuit Judges, and YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Lewis Shrewsbury appeals from an order of the district court upholding the determination of the Secretary of Health and Human Services ("Secretary") that Shrewsbury was not eligible for social security disability insurance benefits. Finding no error, we affirm the SSI determination.
 
 I.
 A.
 
 2
 Shrewsbury worked as an electrician in a coal mine until April, 1980, when he suffered a back injury that forced him to take a medical leave. After receiving workers' compensation for more than a year following the accident, Shrewsbury was cleared to return to light duty work. The mine was soon thereafter closed, however, and his position was terminated.
 
 
 3
 After the brief initial treatments following his injury, Shrewsbury did not see a doctor again until September, 1986, when he sought care for back problems from Dr. Samuel Muscari. Dr. Muscari diagnosed spinal compression deformities and other back problems, and he pre scribed pain relievers for Shrewsbury through March, 1990.[1] While on this medication, Shrewsbury worked as an auto mechanic for six months in 1985 and 1986 and as a scoop operator in a coal mine for seven months in 1989.
 
 
 4
 In July, 1988, Shrewsbury sought state disability assistance and was examined by Dr. Gregory Zamensky to determine eligibility. Dr. Zamensky found certain vocational limitations, and Shrewsbury was eventually found qualified to receive assistance. In 1989 and 1992, Shrewsbury was again evaluated for the purposes of determining eligibility for benefits by Dr. R.M. Bellam. Dr. Bellam concluded that Shrewsbury was disabled due to chronic back pain.
 
 
 5
 In September, 1991, Shrewsbury applied for Supplemental Security Income ("SSI") pursuant to 42 U.S.C. # 8E8E # 1381-83 alleging that he was unable to work due to his back injuries, high blood pressure, and depression. Dr. Gary Craft performed the consultative examination for the Secretary to evaluate the claim for SSI.[2] Dr. Craft found back injuries and noted Shrewsbury's complaints of a lung condition, but Dr. Craft also found that Shrewsbury was generally fit and did not suffer from disabling mental conditions.
 
 
 6
 Shrewsbury contemporaneously sought treatment for his alleged mental problems at the Southern Highland Community Mental Health Center and was evaluated by Dr. F. Joseph Whelan.[3] He found evidence of depression and other related difficulties and prescribed psychotropic drugs. Dr. Whelan thereafter sent a letter in support of Shrewsbury's SSI claim suggesting that Shrewsbury was unable to work due to lack of social skills and anger control. Dr. Whelan later sent an assessment stating that Shrewsbury had no useful ability to function in the working world to an Administrative Law Judge ("ALJ") following the administrative hearing but before a decision was rendered.
 
 
 7
 In January, 1993, the ALJ found that Shrewsbury was not entitled to SSI benefits because he was not disabled within the meaning of the Social Security Act. 20 C.F.R. Sec. 416.920. While Shrewsbury's appeal was pending, Dr. Whelan sent another letter to the Appeals Council containing the results of another examination performed in January, 1993, at which time he concluded that Shrewsbury was totally disabled. In May, 1993, the Appeals Council denied Shrewsbury's request for review.
 
 
 8
 Shrewsbury sought judicial review of the ALJ's decision in the United States District Court for the Southern District of West Virginia. In May, 1994, United States Magistrate Judge Mary Feinberg affirmed the Secretary's decision, and the District Court entered an order adopting the Magistrate's findings. A timely notice of appeal was filed.
 
 B.
 
 9
 The Secretary's determination must be affirmed if it is supported by substantial evidence. 42 U.S.C. Sec. 405(g). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support that determination. Richardson v. Perales, 402 U.S. 389, 401 (1971). The Secretary's findings of fact are not binding, however, if they were based upon the application of an improper legal standard. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir.1987).
 
 II.
 
 10
 Shrewsbury initially claims that the Secretary erred by failing to give appropriate weight to the conclusions submitted by Dr. Whelan. Shrewsbury asserts that the ALJ improperly dismissed Dr. Whelan's findings suggesting grave mental problems and that the Appeals Council had no basis upon which to disregard Dr. Whelan's supplemental examination and finding of total disability.[4] Pursuant to 20 C.F.R. Sec. 416.927(d)(2),[5] the Secretary must generally give more weight to the opinion of a treating physician because that physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. However, that opinion should be credited only to the extent of its "intrinsic value, persuasiveness, and internal consistency" as well as its consistency with other evidence. 56 Fed.Reg. at 36934-35. The "length, frequency, nature, and extent of the [physician-claimant] relationship" should thus be considered when relying upon the opinion to determine disability. Id. The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for SSI. 20 C.F.R. Sec. 416.927(d)(4).
 
 
 11
 While Dr. Whelan met with Shrewsbury three times during the relevant period, and thus was a treating physician under 20 C.F.R. Sec. 416.927(d)(2)(i), the Secretary's rejection of Dr. Whelan's finding of total disability was supported by substantial evidence. The ALJ found that Dr. Whelan had limited exposure to Shrewsbury and did not refer to any specific psychological testing in any of his correspondence to support his conclusions. Further, Dr. Whelan completely disregarded Shrewsbury's work history during the relevant periods. Dr. Whelan also found that Shrewsbury had a fair ability to maintain concentration and was good with general work and social skills, although Dr. Whelan soon thereafter suggested that Shrewsbury was totally disabled. All of these factors support the ALJ's determination that Dr. Whelan's assertion of total disability is of limited value.[6]
 
 
 12
 Moreover, other evidence in the record contradicted Dr. Whelan's specific findings. Dr. Craft found that Shrewsbury did not display any "overt psychiatric behavior," and Shrewsbury never sought treatment for mental problems until after he began seeking SSI benefits. Fur ther, the only course of treatment recommended or followed was the prescription for mild psychotropic drugs. Ultimately, the ALJ found Shrewsbury's problems to be amenable to treatment and thus not totally disabling.
 
 
 13
 The ALJ specifically recognized the requirements of 20 C.F.R. Sec. 416.927 and found that "minimal weight" was to be given to the opinions given by Dr. Whelan because they were unsupported by psychiatric evidence. The Appeals Council properly rejected the later findings submitted by Dr. Whelan as being merely conclusory. The Secretary's decision was supported by substantial evidence.
 
 III.
 
 14
 Shrewsbury next claims that the ALJ improperly evaluated Shrewsbury's subjective complaints of pain. When determining eligibility for SSI benefits, an ALJ must consider all "symptoms, including pain, and the extent to which ... symptoms can reasonably be accepted as consistent" with other evidence. 20 C.F.R. Sec. 416.929. Substantial evidence supports the Secretary's finding that Shrewsbury did not suffer from disabling pain.
 
 
 15
 The ALJ noted that Shrewsbury required no ongoing treatment or medications prior to his claim for SSI benefits. Shrewsbury had not been hospitalized and did not seek surgery and the evidence suggested that the existing problems could be treated with conservative medical treatments. Dr. Craft's examination found that Shrewsbury could do routine physical tasks. The ALJ found the record in its entirety lacked any evidence of a source of severe pain or of Shrewsbury acting in a manner consistent with an individual with such pain. Substantial evidence exists to support the ALJ's finding that objective evidence of the level of Shrewsbury's pain is inconsistent with that which would preclude medium exertional work.
 
 
 16
 Having found insufficient objective evidence of a treatment history or likely ailment consistent with the severity of the alleged pain, the ALJ made a simple credibility determination. He found that past inconsistencies in the record, treatment history, and demeanor at the hearing made Shrewsbury's claims of pain not credible.[7] This determination is supported by substantial evidence.
 
 IV.
 
 17
 Shrewsbury finally asserts that the ALJ erred by asking the vocational expert a hypothetical question that did not mention certain mental conditions allegedly suffered by Shrewsbury. After listing the factors, the ALJ asked the vocational expert about the general impact such conditions would have on an individual's ability to work, and the vocational expert testified that there would be little impact. Shrewsbury contends that the failure to include these factors rendered the ALJ's hypothetical question improper as such a question asked of a vocational expert is only valid if all known relevant information is included. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir.1989).
 
 
 18
 The alleged factors that were not mentioned to the vocational expert were also unknown to the ALJ, however, and they were not disclosed to the Secretary until Dr. Whelan's final letter was submitted to the Appeals Council three weeks after the ALJ rendered his decision. All known relevant factors were included in the ALJ's hypothetical. The ALJ did not err by failing to mention considerations of which he himself was not aware.
 
 AFFIRMED
 DIANA GRIBBON MOTZ, Circuit Judge, concurring:
 
 19
 Although I concur in the judgment, I write separately to clarify my reading of the ALJ's decision with respect to Shrewsbury's mental illness. As I read the decision, the ALJ did not reject or discount Dr. Whelan's psychological assessment of Shrewsbury. In fact, the ALJ cited Whelan's opinion only once, and then in a favorable way, noting that "[t]he claimant's treating physician recently indicated the claimant had a fair to good ability to perform basic work related activities." Moreover, it should be noted that Dr. Craft performed only a "general medical evaluation," limiting his assessment of Shrewsbury's psychological condition to the conclusion that Shrewsbury "related well to other people and was free of any overt psychiatric behavior." Nevertheless, I believe that the Secretary's determination that Shrewsbury's mental illness "would not have prevented him from performing routine work activity in ordinary work environments for a continuous period of at least twelve months" was supported by substantial evidence. The ALJ noted that Shrewsbury had no prior history of intensive psychiatric treatment or institutionalization and that a mental status examination revealed very few signs of depression. In addition, the ALJ observed that Shrewsbury's mental symptoms had been of very brief duration and were amenable to conservative treatment, including the prescription of minor psychotropic medication and monthly therapy. Finally, the ALJ noted the lack of documentation of marked functional limitations and concluded that Shrewsbury "has the residual functional capacity to perform routine medium exertional activity in ordinary work environments." In light of these findings, I concur.
 
 MURNAGHAN, Circuit Judge, dissenting:
 
 20
 In the case before us, the ALJ made two errors of law. First, the ALJ failed to accord proper deference to the opinions of Lewis Shrewsbury's treating physician, Dr. Joseph Whelan, who unequivocally stated that he found Shrewsbury to be "permanently and totally disabled for any type of substantial gainful occupation." Second, the ALJ failed to employ the proper legal standard in evaluating Shrewsbury's subjective complaints of pain. Because I believe that such errors compel a reversal here, I respectfully dissent.
 
 
 21
 The "treating physician's rule," as set forth in the law of the Fourth Circuit, requires that the opinion of a claimant's treating physician be given great weight, and that such an opinion may be disregarded "only if there is persuasive contradictory evidence" in the record. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir.1987); Foster v. Heckler, 780 F.2d 1125, 1130 (4th Cir.1986) (finding that a treating physician's testimony is "entitled to great weight for it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time"). In the instant case, the ALJ failed to set forth such "persuasive contradictory" evidence which would suggest that Dr. Whelan's finding of disability was incorrect. Indeed, the ALJ, in support of his determination that Shrewsbury was not disabled, stated only: (1) that there was "no doc umentation of marked functional limitations"; (2) that Dr. Gary Craft, another physician, characterized Shrewsbury as having a "normal mental status"; and (3) that Shrewsbury had no history of institutionalization. For several reasons, these assertions simply do not constitute the type of "persuasive contradictory" evidence which would permit the ALJ to disregard Dr. Whelan's unequivocal opinion that Shrewsbury was disabled.
 
 
 22
 First, as stated by Shrewsbury in his Brief to the Court, although it may be acceptable to reject a treating physician's opinions when there is contradictory medical evidence, it is not acceptable to do so in the absence of any medical evidence to the contrary. The ALJ's statement, for example, that Shrewsbury had no history of institutionalization simply is not persuasive contradictory evidence. Second, the ALJ's reliance on Dr. Craft's statement that Shrewsbury "was free of any overt psychiatric behavior," is severely misplaced for several reasons: (1) Dr. Craft, unlike Dr. Whelan, was not a psychiatrist, and had examined Shrewsbury only once, mostly to evaluate his physical condition; (2) Dr. Craft made his statement about Shrewsbury's mental health as an afterthought in the last sentence of a letter describing Shrewsbury's general medical condition; and (3) Dr. Craft's statement was not based on any detailed psychiatric examination of Shrewsbury, as compared to Dr. Whelan's conclusions, which were based on several mental examinations and on a longstanding doctor-patient relationship with Shrewsbury. Thus, Dr. Craft's isolated statement about Shrewsbury's mental health cannot be considered persuasive contradictory evidence.
 
 
 23
 Second, Dr. Whelan's opinion was severely mischaracterized by the ALJ. Indeed, the ALJ's only reference to Dr. Whelan was the ALJ's bald assertion that "the claimant's treating physician recently indicated that the claimant had a fair to good ability to perform basic work related activities." (emphasis added). This characterization of Dr. Whelan's findings is not only incomplete, but also flies in the face of the facts contained in the record. First, the ALJ omitted from his opinion the crucial fact that the form used by Dr. Whelan expressly defined "fair ability" as meaning that "the ability to function in this area is severely limited, but not precluded." Second, the ALJ selectively lifted Dr. Whelan's statement from a more complete report compiled by him, which found, among other things, that Shrewsbury had "no useful ability" to deal with work stresses. Third, the ALJ simply omitted from his opinion the extensive reports and letters written by Dr. Whelan, in which Whelan unequivocally stated that Shrewsbury was disabled. For example, in a January 31, 1993 report based on a psychiatric evaluation of Shrewsbury on November 17, 1992, Dr. Whelan stated:
 
 
 24
 My diagnostic impression is that this man suffers from a dysthymic disorder. This would be best coded on the DSMIII as 309.4. I do consider this psychiatric disorder to be directly brought about, aggravated by, and sustained by the residual and intractable chronic pain, suffering and disability resulting from all of illnesses/injuries and conditions which he has suffered throughout the course of life and still suffers. When this is viewed as a whole person and when one integrates and correlates the residual psychiatric as well as the residual physical signs and symptoms, I consider him to be permanently and totally disabled for any type of substantial gainful occupation currently available in the United States employment market on a sustained basis. In short, he has no residual capacity to return to his former occupation or anything similar.
 
 
 25
 (emphasis added). Similarly, in an earlier May 27, 1992 letter, Dr. Whelan came to the following conclusions about Shrewsbury's progress since he first began outpatient treatment at a treatment center in September 1991:
 
 
 26
 Since beginning treatment, Mr. Shrewsbury has made only moderate improvement in his symptoms of depression and anxiety. He still continues to have severe obsessive thoughts regarding his ex-wife and divorce. These thoughts prevent adequate social skills due to lack of trust, suspicion of others, and discomfort around strangers. Mr. Shrewsbury also has an exaggerated sense of self-importance and entitlement which leads to inordinate anger toward people and public agencies when he feels slighted or denied. These personality traits could at some future point call for additional diagnosis of a personality disorder. However, further evaluation is necessary before determining this.
 
 
 27
 In terms of Mr. Shrewsbury's ability to maintain substantial gainful employment, he is not likely to at this time, nor is he likely to in the future due to the lack of social skills and anger control.
 
 
 28
 In light of such evidence, it is clear that the ALJ severely mischaracterized the opinions of Dr. Whelan. Indeed, the overwhelming weight of Dr. Whelan's opinions clearly indicates that Shrewsbury was not able to function in the workplace, and that he was totally disabled within the meaning of the Social Security Act. The ALJ, however, selectively omitted any mention of such conclusions in his opinion.
 
 
 29
 Third, the ALJ ignored his responsibility under the regulations to "give good reasons in [his] notice of determination or decision for the weight [he] g[ave][the] treating source's opinion." 20 C.F.R. Sec. 416.927(d)(2). Indeed, the ALJ stated nowhere in his opinion his reasons for disregarding Dr. Whelan's reports, and instead incorrectly stated that there was a "lack of documentation of functional limitations," a statement that was clearly erroneous in light of the written opinions of Dr. Whelan which unequivocally stated facts to the contrary.
 
 
 30
 Shrewsbury's second assignment of error--that the ALJ erred in failing to afford proper weight to Shrewsbury's subjective complaints of pain--also has great merit here. In the proceedings below, the ALJ improperly ignored Shrewsbury's complaints of pain, finding instead that Shrewsbury's complaints were simply not credible. In particular, the ALJ found:
 
 
 31
 At the hearing the claimant related multiple subjective complaints including incapacitating back pain and depression. The claimant's testimony concerning the severity of his medical symptoms and functional limitations, however, appeared to be unreliable, self-serving, and out of proportion with the medical findings, and accordingly, lacked credibility.
 
 
 32
 Under the Fourth Circuit's "pain rule," it is well established that subjective complaints of pain and physical discomfort can give rise to a finding of total disability, "even when those complaints [a]re not supported fully by objective observable signs." Coffman v. Bowen, 829 F.2d at 518. See also Thompson v. Sullivan, 980 F.2d 280, 282 (4th Cir.1992). Indeed, the Fourth Circuit has expressly, and repeatedly, rejected a rule which would require the claimant to demonstrate evidence of the actual existence of the alleged pain.
 
 
 33
 In Jenkins v. Sullivan, 906 F.2d 107 (4th Cir.1990), for example, this Court reversed a denial of benefits which was based on the ALJ's finding that no specific evidence supported the claimant's allegations of pain. In that case, the ALJ had discredited the claimant's testimony on pain based partially on his observation that the claimant did not seem to be in any discomfort during the hearing, and partially on his conclusion that the claimant's physical condition did not support the claim of pain. 906 F.2d at 108. In finding that the ALJ improperly evaluated the claimant's complaints of pain, this Court held:
 
 
 34
 The standard for evaluating disabling pain was recently adopted by Congress in the Social Security Disability Benefits Reform Act of 1984.... First in Foster v. Heckler, 780 F.2d 1125, 1129 (4th Cir.1986), and more recently in Walker v. Bowen, 876 F.2d 1097, 1099 (4th Cir.1989), this court has interpreted this statute as requiring a claimant to show objective medical evidence of some condition that could reasonably be expected to produce the pain alleged, not objective medical evidence of the pain itself.
 
 
 35
 Id. (emphasis added). Under this standard, we found that the ALJ had erred in recommending a denial of benefits based on an absence of "objective findings" supporting the degree of pain alleged by the claimant. Id. at 109. Indeed, we found that under the proper standard, the claimant's complaints of pain were well supported because the ALJ had noted at least two physical conditions that "reasonably could" have produced this pain. Id. See also Hyatt v. Sullivan, 899 F.2d 329, 333 (4th Cir.1990).
 
 
 36
 In the case at bar, the ALJ improperly disregarded Shrewsbury's subjective complaints of pain on the ground that Shrewsbury's testimony concerning the severity of his medical symptoms was "unreliable, self-serving, and out of proportion with the medical findings, and accordingly lacked credibility." First, as noted above, the Fourth Circuit's "pain rule" requires only that a claimant's subjective complaints of pain be supported by medical evidence of the existence of some impairment that "could result in the pain alleged," and does not require that there be some objective manifestation of the pain itself. Foster v. Heckler, 780 F.2d 1125, 1129 (4th Cir.1986). Under this well-established rule, the ALJ in the instant case should have afforded weight to Shrewsbury's subjective complaints of pain as long as there existed evidence that he suffered from some condition that could have caused such pain. Throughout the ALJ's opinion, the ALJ acknowledged that Shrewsbury did suffer from back trauma, and that many doctors had confirmed that he suffered from back pain. This admission that Shrewsbury did have some impairment which could have resulted in the pain, therefore, should have been sufficient to support Shrewsbury's subjective pain testimony. The standard used by the ALJ for evaluating Shrewsbury's testimony was simply not the proper standard for evaluating subjective complaints of pain in this Circuit.
 
 
 37
 Second, the Appellee, throughout its Brief to this Court, erroneously attempted to support its argument to the contrary by stating that there existed no medical evidence supporting Shrewsbury's allegations of pain; for example, the Appellee argued that Shrewsbury could not have been in pain because he did not limp and because his treatment history was "not consistent with severe, intractable pain." Brief at 29. For the reasons stated above, however, these arguments are ill-conceived under the Fourth Circuit's "pain rule," which expressly states that complaints of pain need not be supported with evidence of the pain itself, but rather need only be supported with evidence that the claimant suffered some impairment which could have resulted in the pain. In the instant case, there was overwhelming evidence that Shrewsbury suffered from various physical ailments which could have caused him pain.
 
 
 38
 Third, although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. Breeden v. Weinberger, 493 F.2d 1002, 1010 (4th Cir.1974) ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained."). In the instant case, the ALJ's credibility determinations were improper because the ALJ in part relied on his observation that Shrewsbury's demeanor at the hearing was "not consistent with the presence of any physical or mental impairment," and that Shrewsbury "tolerated the hearing very well." This is precisely the type of credibility analysis that this Court has rejected. See Jenkins v. Sullivan, 906 F.2d 107, 108 (4th Cir.1990) (noting that this Court has rejected the use of so-called "sit and squirm jurisprudence" in which credibility determinations are based on the ALJ's own observations of the claimant at the hearing). The ALJ's ability to make credibility determinations does not include the right to come to his own conclusions about a claimant's actual level of pain by observing the claimant's demeanor at trial.
 
 
 39
 Fourth, the ALJ failed satisfactorily to explain the basis on which he refused to accord any weight to Shrewsbury's complaints of pain. Indeed, the ALJ stated only that Shrewsbury's testimony "appeared unreliable, self-serving, and out of proportion with the medical findings." All complaints of pain, however, could be deemed "selfserving," and therefore under the ALJ's argument, any subjective complaint of pain would be unreliable; that is clearly an incorrect result under the Fourth Circuit's "pain rule." Moreover, the ALJ's finding that Shrewsbury's complaints were "out of proportion with the medical findings," was simply unsupported by the record; indeed, the overwhelming evidence in the record showed that Shrewsbury had suffered from back trauma and back pain for several years as confirmed by the testimony of several doctors. Because such back trauma "could have" resulted in the pain claimed by Shrewsbury, the ALJ's decision to disregard Shrewsbury's testimony was incorrect.
 
 
 40
 Accordingly, I dissent.
 
 
 
 [1]
 Shrewsbury never sought, nor was he advised to seek, surgery or any further treatments for his injuries other than the prescribed medication
 
 
 [2]
 Shrewsbury concedes that Dr. Craft's examination was necessitated by the relative scarcity of medical records available to the Secretary at the time
 
 
 [3]
 Dr. Whelan apparently personally evaluated and/or treated Shrewsbury three times
 
 
 [4]
 As the Appeals Council clearly considered Dr. Whelan's supplemental letter, this Court must evaluate the entire record, and not merely the record before the ALJ, to determine whether substantial evidence exists to support the Secretary's determination. See Riley v. Shalala, 18 F.3d 619, 622 (8th Cir.1994)
 
 
 [5]
 As regulations supersede contrary precedent, Satellite Broadcasting and Communications v. Oman, 17 F.3d 344, 347-48 n. 8 (11th Cir.1994), the cases cited by Shrewsbury defining the scope of the "treating physician rule" decided prior to 20 C.F.R. Sec. 416 and related regulations are not controlling
 
 
 [6]
 The ALJ did not deny the existence of mental problems, but rather found Dr. Whelan's claims to be unsupported as to the severity of Shrewsbury's disability
 
 
 [7]
 Shrewsbury asserts that the ALJ applied the "sit and squirm test," but it is not reversible error for an ALJ to consider a claimant's demeanor when he has already determined that the claimant's alleged level of pain is inconsistent with the objective medical evidence