Marsha C. WINFORD, Plaintiff,

v.

Shirley S. CHATER, Commissioner of Social Security, Defendant.

Action No. 2:95cv132.

United States District Court,
E.D. Virginia,
Norfolk Division.

Feb. 26, 1996.

Wanda Nell Allen, Newport News, VA, for Plaintiff.

George M. Kelly, III, Assistant U.S. Attorney, Norfolk, VA, Charlotte Hardnett, United States Department of Health & Human Services, Office of the General Counsel, Philadelphia, PA, for Defendant.

## OPINION

REBECCA BEACH SMITH, District Judge.

This matter is before the Court upon the objections of Defendant Shirley S. Chater, Commissioner of Social Security, to Magistrate Judge Bradberry's Report and Recommendation, which recommended that the Court deny Defendant's Motion for Summary Judgement and reverse the ruling of the Administrative Law Judge which denied Plaintiff Marsha C. Winford disability insurance benefits.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case are fully and accurately set forth in Judge Bradberry's Report and Recommendation. The Court, however, will provide a brief outline of the relevant events.

On August 5, 1992, Plaintiff applied for disability insurance benefits with the Social Security Administration. In her application, Plaintiff states that she became disabled on March 22, 1990, as a result of high blood pressure, knee pain, chronic lumbar strain, stomach disorders, and vision problems. The Social Security Administration denied her request for benefits on September 22, 1992. Plaintiff's Motion for Reconsideration was denied on January 8, 1993. Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ"); the hearing was held on November 3, 1993.

Plaintiff and a vocational expert testified at the hearing. Medical records from Plaintiff's treating physicians and one other physician were entered into the record as exhibits. The ALJ issued his ruling on June 21, 1994. He denied Plaintiff benefits, holding that she was capable of performing sedentary work[1] despite the physical limitations relating to a knee disorder and a hernia. Plaintiff requested a review of the ALJ's ruling by the Appeals Council, but this request was denied.

Plaintiff brought this action, pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner's decision to deny her benefits. Defendant promptly filed a Motion for Summary Judgment. Defendant's motion was referred to Magistrate Judge Bradberry. Judge Bradberry recommended that the Court deny Defendant's motion, reverse the ALJ, and order Defendant to award Plaintiff disability insurance benefits.

On January 22, 1996, Defendant filed objections to Judge Bradberry's Report and Recommendation. For the reasons stated below, the Court OVERRULES Defendant's objections and ADOPTS the ruling of the Magistrate Judge, as modified by this Opinion.

### II. ANALYSIS

A. Standards of Review

1. Magistrate Judge's Report and Recommendation

█ If a party serves and files written objections to the Magistrate Judge's Report and Recommendation, the District Judge is required to make a de novo determination of those portions of the report to which objec-

---

1. "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, or small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

tion is made, and either affirm, reject, or modify the Magistrate Judge's recommendation. *See* 28 U.S.C. § 636(b)(1).

### 2. *ALJ's ruling*

■ When a social security claimant appeals a final decision of the Commissioner, the district court must determine whether, based on the entire administrative record, the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Substantial evidence is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury then there is 'substantial evidence.'

*Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir.1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966)).

### B. *Discussion*

After reviewing the entire administrative record *de novo*, the Court finds the Magistrate Judge's Report and Recommendation well-reasoned and supported by the record and the applicable law. The Court, however, notes two errors in the Magistrate Judge's Report and Recommendation. In section II(A), the Magistrate Judge applied a legal standard, regarding the weight to be given to the opinion of a treating physician, which has been superseded by regulation; in section II(B), the Magistrate Judge failed to discuss a regulation which adopted the Fourth Circuit's rule on the evaluation of pain. With the exception of these two sections, the Court affirms and adopts the Magistrate Judge's Report and Recommendation. Sections II(A) and (B) of the Report and Recommendation are modified in accordance with this opinion.

### 1. *Section II(A)—the "treating physician rule"*

■ Although the Magistrate Judge reached the proper outcome in this case, he applied the wrong legal standard relating to the consideration of a treating physician's opinion. *See* Report and Recommendation § II(A). Prior Fourth Circuit precedent established the weight which an ALJ must accord to the opinion of a treating physician. Under the "treating physician rule," the opinion of a claimant's treating physician must "be given great weight and may be disregarded only if there is persuasive contrary evidence." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir.1987); *see also Wilkins v. Secretary, Dep't of Health and Human Serv.*, 953 F.2d 93, 96 (4th Cir.1991); *Foster v. Heckler*, 780 F.2d 1125, 1130 (4th Cir.1986). Applying this rule, the Magistrate Judge held that the ALJ failed to accord sufficient weight to the opinions of Plaintiff's treating physicians because no persuasive evidence in the record contradicted these opinions.

On August 1, 1991, the Social Security Administration promulgated a regulation entitled "Evaluating medical opinions about your impairment(s) or disability." 20 C.F.R. § 404.1527. This regulation supersedes the Fourth Circuit's "treating physician rule," which the Magistrate Judge applied in this case. *See Shrewsbury v. Chater*, 1995 WL 592236 at *9 n. 5 (4th Cir.1995) (unpublished) ("As regulations supersede contrary precedent, the cases cited by Shrewsbury defining the scope of the 'treating physician rule' decided prior to 20 C.F.R. § 416 and related regulations are not controlling.") (citation omitted); *Schisler v. Sullivan*, 3 F.3d 563, 568 (2nd Cir.1993) (holding that the 1991 regulations supersede the Second Circuit's "treating physician rule," the Court found that the regulations are a valid exercise of the Commissioner's rule-making power).

The legal standard which should have been applied is contained in 20 C.F.R. § 404.1527. Under section 404.1527, the opinion of a treating physician is entitled to more weight than the opinion of a non-treating physician. It is only given controlling weight, however, if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2). This standard, of

course, is more stringent than the old "treating physician rule," which accorded a treating physician's opinion controlling weight unless the record contained persuasive evidence to the contrary. *See Coffman*, 829 F.2d at 517.

Under section 404.1527, if an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must then consider the weight to be given to the physician's opinion by applying five factors identified in the regulation: (1) the length of the treatment relationship and the frequency of the examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527(d)(2)(i–ii), and (d)(3)–(5).

In this case, Plaintiff had three treating physicians, all of whom rendered an opinion as to Plaintiff's physical impairments. The ALJ determined that none of these opinions were entitled to controlling weight, and he accorded little, if any, weight to the judgments of Plaintiff's attending doctors. The decision by the ALJ to not grant controlling weight to the opinions of Plaintiff's treating physicians was not supported by substantial evidence in the record. The Magistrate Judge's recommendation to reverse the ALJ's ruling on this ground, therefore, is affirmed.

Plaintiff began experiencing problems with her knees in 1988. Although she felt pain in both her knees, the pain in her left knee was worst; her left knee would click and lock-up when she walked. (Administrative Record ("R.") at 131). Plaintiff was treated by Dr. Jeffrey K. Wilson. Dr. Wilson diagnosed chronic synovitis [2] in both knees. (R. at 132). On November 23, 1988, Dr. Wilson performed a diagnostic arthroscopy,[3] an arthroscopic partial medial meniscectomy, and a chondral shaving of the undersurface of the patella on Plaintiff's left knee. While performing the arthroscopy, Dr. Wilson detected a tear in the posterior horn of the medial meniscus and evidence of patellofemoral arthritis.[4] (R. at 132). A pathology report discussing the analysis of material removed from Plaintiff's knee during the procedure indicated internal derangement of the left knee and chronic synovitis. (R. at 134). After recovering from the surgery, Plaintiff was allowed to return to work on March 31, 1989. (R. at 182).

In July, 1989, Plaintiff was seen by Dr. William Fleming, an orthopedic surgeon, for complaints of cramping in her left calf. (R. at 175). Dr. Fleming noted that Plaintiff had crepitus [5] about the left knee, she had a limited and painful range of motion in her knee joint, and she had an abnormal gait due to degenerative arthritis of the knee. Dr. Fleming prescribed pain medication, and scheduled a follow-up examination. During the follow-up appointment, later in July, Plaintiff complained of persistent pain in her knee, but the pain in her calf decreased after she limited her walking. *Id.* Dr. Fleming observed palpable synovitis of the left knee. *Id.* On August 14, 1989, an MRI (magnetic resonance imaging) of Plaintiff's left knee revealed a large joint effusion [6] and a possible Baker's Cyst.[7] (R. at 172). Following an examination on August 28, 1989, Dr. Fleming reported that Plaintiff was experiencing persistent pain in her knee, although a light duty restriction had helped somewhat. He also noted mild effusion and palpable synovi-

---

**2.** Synovitis is the "[i]nflammation of a synovial membrane, especially that of a joint." *Illustrated Stedman's Medical Dictionary* ("*Stedman*") 1398 (24th ed.) (1982). When the term is unqualified, "synovitis" is equivalent to arthritis, or the inflammation of a joint. *Id.* at 1398, 124.

**3.** An arthroscopy is a surgical examination of the interior of a joint. *Id.* at 125.

**4.** Arthritis between the kneecap and the thigh. *Id.* at 518, 1040.

**5.** Crepitus is defined as "the grating of a joint." *Id.* at 34.

**6.** Effusion is the "escape of fluid from the blood vessels or lymphatics into the tissues or a cavity." *Stedman, supra* note 2, at 446.

**7.** A Baker's Cyst is a collection of fluid which escaped from the knee joint and formed a sac. *Id.* at 353. It is often found with "degenerative or other joint diseases." *Id.*

tis. At this time, Dr. Fleming advised Plaintiff to change jobs, as excessive walking would aggravate her knee condition. (R. at 171).

Plaintiff returned to see Dr. Wilson on September 1, 1989. He reported effusion of the left knee, and injected the knee with Depo Medrol. (R. at 179). Following this examination, Dr. Wilson drafted a letter to Plaintiff's employer. (R. at 180). In this letter, Dr. Wilson described Plaintiff's condition and stated his opinion that Plaintiff was unable to tolerate a job which required significant walking or standing. He suggested a permanent job change to a more sedentary position. *Id.*

In June, 1990, Plaintiff was seen by Dr. Fleming again for complaints of recurring pain in her left knee. (R. at 170). Dr. Fleming noted synovitis of the knee and injected the knee with medication. He also prescribed the pain medication Naprosyn. *Id.* During a follow-up visit on July 3, 1990, Plaintiff again complained of persistent pain in her knee. Dr. Fleming prescribed physical therapy. *Id.* Although Plaintiff reported decreased knee pain following physical therapy, her knee again gave out and locked on August 30, 1990. (R. at 169). Because of the continuing problem with Plaintiff's knee, Dr. Fleming performed a second arthroscopy on December 12, 1990. (R. at 173). During the procedure, Dr. Fleming discovered degenerative arthritis and a tear of the left lateral meniscus. *Id.* He ordered Plaintiff to use crutches following the procedure.

During the next several months, Plaintiff saw Dr. Fleming on numerous occasions, complaining of pain in her knee. *See* Report and Recommendation at 7–8. He prescribed pain medication, injected the knee with medication, and, at one point, ordered Plaintiff to use a cane. *Id.* Dr. Fleming advised Plaintiff that she would be unable to return to her past job, and that she may eventually need a total knee replacement. (R. at 164). He noted that Plaintiff could not walk more than a few hundred yards without feeling severe knee pain. *Id.*

On February 3, 1992, Plaintiff went to see Dr. Harvey H. Bercowitz, an internist, for complaints of abdominal pain. Among a host of other medical problems which Plaintiff suffered at that time, she reported a history of arthritis in her knees. (R. at 202).

On August 21, 1994, Dr. Bercowitz completed a physical capacities assessment for Plaintiff. (R. at 210–11). In that assessment, Dr. Bercowitz reported that Plaintiff was able to stand or walk at most four hours per day and sit at most two hours per day. She could frequently lift or carry at most five pounds, bend occasionally, squat or kneel not at all, climb occasionally, lift, balance, and use foot controls frequently, and push and pull occasionally. Dr. Bercowitz stated his opinion that Plaintiff had a marked decrease in range of motion in the left knee, crepitus, tenderness of the left knee, and a slight decrease in range of motion in the right knee. *Id.* In a physician's statement completed in March, 1993, Dr. Bercowitz diagnosed osteoarthritis [8] of both knees, he noted a decreased range of motion, minor swelling, and tenderness of both knees, and he reported that Plaintiff's complaints of moderate to moderately severe pain were consistent with his objective findings. Dr. Bercowitz concluded with his opinion that Plaintiff was unable to engage in either light or sedentary work. (R. at 213–14).

Dr. Fleming completed a medical assessment for Plaintiff on August 12, 1992. (R. at 230). In this report, Dr. Fleming reported that Plaintiff experienced persistent pain and stiffness in her knees, a marked limitation of motion in her knees, fibrous ankylosis,[9] instability, and a marked limitation in her ability to stand or walk. Dr. Fleming also stated that there was x-ray evidence of either signif-

---

8. Osteoarthritis is a "noninflammatory degenerative joint disease occurring chiefly in older persons, characterized by degeneration of the articular cartilage, hypertrophy of bone at the margins, and changes in the synovial membrane. It is accompanied by pain and stiffness, particularly after prolonged activity." *Dorland's Illustrated Medical Dictionary* 941 (26th ed.) (1985).

9. Fibrous ankylosis is the "stiffening of a joint due to the presence of fibrous bands between and about the bones forming the joint." *Stedman, supra* note 2, at 81.

icant joint space narrowing or significant bony destruction. *Id.* Dr. Fleming completed a physician's statement for Plaintiff on April 19, 1993. (R. at 216–17). In this statement, Dr. Fleming diagnosed severe degenerative arthritis in both knees. He stated that Plaintiff's condition would worsen and she would eventually require a total knee replacement. Dr. Fleming stated that Plaintiff experienced severe pain in her knees. He concluded with his opinion that Plaintiff was unable to sustain either light or sedentary work on a full-time basis. *Id.*

One non-treating physician, Dr. Leopold Moreno, reviewed Plaintiff's medical record and completed a residual physical functional capacity assessment on September 10, 1992. (R. at 89–96). Dr. Moreno diagnosed arthritis of the left knee and a medial meniscus tear of the left knee. He opined that Plaintiff was able to occasionally lift twenty pounds, frequently lift ten pounds, stand or walk for a total of six hours in an eight-hour work day, sit six hours in an eight-hour work day, and push and pull an unlimited amount. (R. at 90).

In his ruling, the ALJ essentially ignored the medical opinions of Plaintiff's treating physicians, relying instead upon snap-shots of Plaintiff's medical history when she was feeling well and Plaintiff's testimony about her daily activities. As the Magistrate Judge stated in his Report and Recommendation, the ALJ's failure to accord proper weight to the opinions of Plaintiff's treating physicians was error.

The opinion of a claimant's treating physician is entitled to considerable weight because only a treating physician is "able to provide a detailed, longitudinal picture of [the claimant's] medical impairment". 20 C.F.R. § 404.1527(d)(2). Under section 404.1527(d)(2), the opinion of a treating physician is entitled to controlling weight if it is "supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Id.*

In this case, the opinions of Plaintiff's treating physicians should be accorded controlling weight. The opinions of Dr. Wilson, Dr. Fleming, and Dr. Bercowitz are supported by two diagnostic arthroscopic surgeries, pathological evaluations, an MRI, and numerous physical examinations over several years. Clearly, their opinions are supported by medially acceptable diagnostic techniques. Neither the ALJ nor anyone else has suggested otherwise.

Furthermore, their opinions are not inconsistent with other substantial evidence. The only evidence which the ALJ could have relied upon to show an inconsistency is the report of one non-treating, non-examining doctor and the testimony of Plaintiff about her daily activities. Clearly, the report of Dr. Moreno, who has never examined Plaintiff, could not be considered substantial evidence justifying a dilution of the opinions of Plaintiff's three treating physicians. The testimony of Plaintiff about her daily activities, which included statements that she could not walk around the block without her knees giving out and that she could hardly climb stairs (R. at 50), likewise does not constitute substantial evidence of an inconsistency with her physicians' opinions. In fact, the great weight of Plaintiffs testimony was completely consistent with these opinions.

The ALJ decided to ignore Dr. Fleming's opinion as set forth in the medical assessment, stating that Dr. Fleming's opinion contradicted his own office records. (R. at 25). In his Report and Recommendation, the Magistrate Judge correctly observed that, after treating Plaintiff for well over a year, Dr. Fleming could appropriately base his opinion not only on his notes, but also on his general knowledge of Plaintiff's condition and on his medical expertise. The Magistrate Judge also noted specific instances where the ALJ incorrectly found an inconsistency. Report and Recommendation at 19. The Magistrate Judge is correct in his observation that Dr. Fleming's medical assessment does not conflict with other evidence in the record relating to his treatment of Plaintiff.

The Court agrees with Magistrate Judge Bradberry that the ALJ should have accorded controlling weight to the opinions of Plaintiff's treating physicians, Dr. Wilson, Dr. Fleming, and Dr. Bercowitz. The ALJ's decision to accord little or no weight to these

404

opinions was not supported by substantial evidence in the record; his ruling, therefore, must be reversed. *See* 42 U.S.C. § 405(g).

### 2. *Section II(B)—evaluation of pain*

 In section II(B) of his Report and Recommendation, the Magistrate Judge found that the ALJ improperly evaluated Plaintiff's allegations of severe pain in her knees. When analyzing the record as it relates to Plaintiff's allegations of pain, the Magistrate Judge correctly applied the Fourth Circuit's pain rule: "where the claimant proves the existence of a medical condition that could cause pain, the claimant's subjective complaints must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." *Mickles v. Shalala,* 29 F.3d 918, 919 (4th Cir.1994).

On November 14, 1991, this rule was incorporated by the Social Security Administration into a regulation entitled "How we evaluate symptoms, including pain." 20 C.F.R. § 404.1529. For more than a decade prior to this regulation, the Administration insisted upon requiring objective medical evidence, not only of a condition which may cause pain, but also of the pain itself. *See* Erin M. Masson, Note, *Social Security Administration Nonacquiescence on the Standard for Evaluating Pain,* 36 Wm. & Mary L.Rev. 1819 (discussing the Administration's policy of refusing to be bound by Fourth Circuit case law establishing the standard by which pain should be evaluated). With the promulgation of section 404.1529, the Administration capitulated to the Fourth Circuit's interpretation of the Social Security Act as it relates to pain evaluation. *Id.* at 1821 (noting that the 1991 regulations were a victory for the Fourth Circuit); *Mickles,* 29 F.3d at 926 n. 4 (Luttig, J. concurring) (stating that the 1991 regulations are not in conflict with Fourth Circuit precedent).

In this case, therefore, the ALJ properly relied upon section 404.1529. As the Magistrate Judge observed, however, the ALJ's ruling as to Plaintiff's allegations of pain was not supported by substantial evidence.

### III. CONCLUSION

For the foregoing reasons and for the reasons articulated by the Magistrate Judge in his Report and Recommendation, the Court **DENIES** Defendant's Motion for Summary Judgment and **REVERSES** the ruling of the Administrative Law Judge which denied Plaintiff disability insurance benefits.

The Clerk is DIRECTED to send a copy of this Opinion to all counsel of record.

It is so ORDERED.