**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

LOIS STROUP,
Plaintiff-Appellant,

v.

No. 96-1722

KENNETH S. APFEL, COMMISSIONER OF
SOCIAL SECURITY,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
T. S. Ellis III, District Judge.
(CA-95-725-A)

Argued: December 2, 1999

Decided: February 24, 2000

Before MURNAGHAN and WILLIAMS, Circuit Judges, and
Cynthia Holcomb HALL, Senior Circuit Judge of the
United States Court of Appeals for the Ninth Circuit,
sitting by designation.

_____

Vacated and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Judith L. Mathis, MATHIS & MATHIS, P.C., Arlington,
Virginia, for Appellant. Nora R. Koch, Assistant Regional Counsel,
Office of the General Counsel, SOCIAL SECURITY ADMINISTRA-
TION, Philadelphia, Pennsylvania, for Appellee. **ON BRIEF:** Char-

lotte Hardnett, Chief Counsel, Region III, James A. Winn, Supervisory Chief, Office of the General Counsel, SOCIAL SECURITY ADMINISTRATION, Philadelphia, Pennsylvania; Helen Fahey, United States Attorney, Lawrence Joseph Leiser, Assistant United States Attorney, Richmond, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The claimant, Lois Stroup (Stroup), appeals from the district court's order upholding the Commissioner of Social Security's denial of Stroup's claim for disability insurance benefits. We vacate and remand.

I.

Stroup worked for twenty years as a public service specialist for the Virginia Department of Motor Vehicles. Stroup has not worked for the DMV since September 4, 1991, when she went to the hospital complaining of chest pain. On September 10, 1991, Stroup underwent quadruple coronary artery bypass grafting surgery after a cardiac catherization revealed severe coronary artery disease.

Dr. Zuckerman, a cardiologist, treated Stroup following her discharge. Stroup began her cardiac rehabilitation program while at the same time her left leg was healing from an incision opened during surgery. During her initial recovery period, Stroup reported short-term memory loss that did not improve over a number of weeks after her surgery. In December 1991, after Stroup reported that she was still having problems with her memory, Dr. Zuckerman referred her to Dr. Mikszewski, a neurologist.

2

Dr. Mikszewski evaluated Stroup and concluded that she had severe memory deficits suggesting the presence of organic amnestic syndrome.[1] Dr. Mikszewski concluded that Stroup would be permanently disabled from performing her former job with the DMV. On April 13, 1992, Dr. Mikszewski wrote to the Virginia Disability Determination Service in connection with Stroup's claim for disability insurance benefits. In his report, he referred to neurological tests that reflected Stroup's poor performance on measures of memory, executive function, motor-speed coordination, and abstract reasoning.

Dr. Kay, a clinical neuropsychologist, evaluated Stroup's memory problems and performed neuropsychological testing in December 1991 and January 1992. Dr. Kay found that Stroup's recognition memory was relatively normal; however, her verbal memory remained "markedly impaired," suggesting that Stroup's memory deficit was primarily the result of "poor retrieval." For example, on a test of story recall, Stroup's results were very poor--she recalled only four out of twenty-one story details. Twenty minutes later she recalled only three out of twenty-one story details. In summarizing his findings, Dr. Kay stated the following:

> Her inattentiveness makes her inefficient and prone to errors. I do not see her as being capable of returning to her former employment. Her memory impairment is quite disabling. She would probably benefit from learning to use compensatory memory strategies. She is very capable of learning to use a notebook or "reminder book" and should be encouraged to make full use of external memory aids.

Stroup sought counseling at the Woodburn Mental Health Center in March of 1992. Ms. Jacobs, a licensed social worker, and two psychiatrists, Dr. Miller and Dr. Tsao, have treated Stroup since then. Dr. Miller and Ms. Jacobs wrote a report on March 17, 1993, which noted that Stroup's recent memory was very impaired, and that she experienced confusion such as forgetting names, appointments, and direc-

_____

[1] An organic amnestic disorder is a memory disturbance without delirium or dementia which impairs selective areas of cognitive functioning to varying degrees. See Lawrence M. Tierney et al., Current Medical Diagnosis and Treatment 934-36 (34th ed. 1995).

3

tions. The report also noted that Stroup's attention span, concentration, persistence, and task completion were impaired due to brain damage. Stroup's memory, concentration, and persistence all decreased under stress.

On December 14, 1993, Dr. Tsao and Ms. Jacobs assessed Stroup's ability to do work-related activities as "poor to none" in eight out of fifteen categories. They rated as "poor to none" Stroup's ability to follow work rules, deal with the public, deal with work stresses, function independently, maintain attention and concentration, and to understand, remember, and carry out simple, detailed, or complex job instructions. Dr. Tsao and Ms. Jacobs' report also noted Stroup's other work-related problems, including forgetting the tasks on which she was working and becoming overwhelmed with anxiety if she had to respond to several people at once. In support of their conclusions, Dr. Tsao and Ms. Jacobs cited Dr. Tsao's examination findings, several neurological examinations in 1992 and 1993, and Dr. Kay's neurological evaluations in 1991-93 at Georgetown University Hospital.

Dr. Tsao also completed a "Treating Physician's Mental Status Evaluation" on December 14, 1993. Dr. Tsao commented that Stroup exhibited significant problems with attention and vigilance, and demonstrated major deficits in her recent memory and ability to concentrate. In commenting on Stroup's "deterioration of adaptive behavior under stress," Dr. Tsao noted that Stroup became easily frustrated and despondent when attempting to concentrate for any sustained period. Consequently, when Stroup was under stress, her memory problems became more severe and she had difficulty sleeping. In commenting on "cognitive deficit," Dr. Tsao noted that Stroup had mild calculation deficits in multiplying numbers and that she could not recall the year of her surgery or what medications she was taking.

On August 3, 1992, Harry L. DeVanney, a consulting psychologist, administered a number of tests to Stroup at the behest of the Social Security Administration. Mr. DeVanney's tests showed conflicting results concerning Stroup's immediate visual memory. Two of Mr. DeVanney's tests suggested that Stroup's immediate visual memory was in the average range; however, one of his tests suggested that Stroup's immediate visual memory was "severely impaired." Mr.

DeVanney concluded that Stroup had "short-term memory impairment at the severe level."

Dr. Zarchin, a neurologist, evaluated Stroup on February 10, 1993. Dr. Zarchin found that Stroup had "evidence of mild cognitive dysfunction, with the exception of short-term memory which is significantly impaired." On March 10, 1993, Dr. Zarchin concluded that Stroup had a residual mild cognitive dysfunction related to ischemic effects in the medial temporal lobes bilaterally. Dr. Zarchin stated that "it is unlikely that she will get any better than her current level of function but . . . there is no reason to expect that there will be any further decline in short-term memory function."

Leonard Perlman, a licensed psychologist and certified vocational expert, conducted a psychological-vocational assessment of Stroup on April 8, 1994. Dr. Perlman administered several tests and conducted a personal interview of Stroup. Based on her performance, Dr. Perlman concluded that Stroup's ability to adjust to any job was poor because Stroup was unable to do basic work-related activities. Dr. Perlman therefore concluded that Stroup was not capable of performing even a "simple sedentary job."

Stroup filed a claim for disability insurance benefits on February 27, 1992, alleging that because of organic amnestic syndrome, she has been unable to work since September 4, 1991. The Virginia State Disability Agency denied her claim and Stroup appealed. On May 18, 1994, a Social Security ALJ conducted a hearing on Stroup's claim. At the hearing, Stroup testified that she blanks out completely if she tries to concentrate for more than a short time because "[i]t's like I know I'm supposed to know something. It's supposed to be in my head, but it's not there, it's gone." In response to questioning by the ALJ about what adaptations she has made to her memory loss, Stroup stated that she writes everything down and plays association games; however, when she attempted to cite an example, she was unable to remember the association she was relating. In response to the ALJ's question if she could remember what she ate for dinner the previous evening, Stroup stated that "I know what I had, but I can't remember the name of it."

Richard Lawrence, Ph.D., testified at the hearing as a vocational expert. The ALJ asked Dr. Lawrence a hypothetical question concern-

5

ing whether jobs exist in the national economy for a person of Stroup's age, education, and work experience, who has the capacity to do light or sedentary work, not requiring any significant stress or good short-term memory. In response, Dr. Lawrence stated that such an individual could perform the job of file clerk or mail clerk, and the sedentary job of telephone answering person or receptionist. The jobs Dr. Lawrence listed were "low stress" jobs that "would not rely heavily upon short-term memory."

On cross-examination, Stroup's counsel asked Dr. Lawrence whether any jobs exist for a person of Stroup's age and background, with the following additional limitations: (1) whose ability to understand, remember, and carry out simple job instructions is poor to none; (2) whose ability to follow work rules consistently is poor to none; (3) whose ability to function independently is poor to none; (4) whose short-term memory is significantly impaired; and (5) whose ability to maintain concentration is poor to none. Dr. Tsao and Dr. Perlman identified these limitations in their reports. Dr. Lawrence responded that no jobs exist for such a person.

The ALJ concluded that Stroup was not capable of performing her former job. The ALJ nevertheless denied Stroup's claim for benefits because he found that Stroup retained the capacity to perform work that does not require heavy lifting, a significant amount of stress, or good short-term memory. The Appeals Council denied Stroup's request for a review of the ALJ's decision; the ALJ's decision therefore became the final decision of the Commissioner.

Stroup appealed the Commissioner's decision to the district court pursuant to 42 U.S.C. § 405(g). The case was referred to a magistrate judge, who issued a report recommending that the district court affirm the Commissioner's denial of benefits. On April 30, 1996, after conducting a de novo review of the record, the district court affirmed the Commissioner's decision. Stroup appeals from the district court's decision.

II.

We review the ALJ's denial of disability insurance benefits to determine whether the ALJ's decision to deny benefits was supported

6

by substantial evidence. See Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence is "more than a mere scintilla" of evidence, but only such evidence "as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). We must address whether the ALJ has analyzed all of the relevant evidence and sufficiently explained his rationale in crediting certain evidence in conducting our "substantial evidence" inquiry. See Milburn Colliery Co. v. Hicks, 138 F.3d 524, 528 (4th Cir. 1998).

In evaluating whether Stroup was entitled to disability insurance benefits, the ALJ followed the five-step sequential evaluation of disability set forth in the Social Security regulations. See 20 C.F.R. § 404.1520. The regulations provide that an ALJ must consider, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to her past work, and (5) if not, whether she retains the capacity to perform specific jobs that exist in significant numbers in the national economy. See id. The claimant bears the burden of production and proof during the first four steps of the inquiry. See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). If the claimant reaches the fifth step, the burden shifts to the Commissioner to show that other jobs exist in the national economy that the claimant can perform despite her condition. See id.

In the instant case, the Commissioner does not dispute that Stroup has satisfied the first four steps of the sequential evaluation: Stroup has organic amnestic syndrome that prevents her from returning to her former job with the DMV. The sole issue on appeal therefore is whether the Commissioner has satisfied his burden of establishing that Stroup can perform other work that exists in significant numbers in the national economy.

A.

Stroup argues that the ALJ erred in disregarding the opinions of Stroup's treating physician, Dr. Tsao.[2]  Relying on the "treating physi-

_____

[2] Stroup also claims that the ALJ improperly disregarded the opinions of Ms. Jacobs, Stroup's social worker. In response, the Commissioner

7

cian rule," Stroup argues that the opinion of her treating physician must be given great weight and "may be disregarded only if there is persuasive contradictory evidence." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

Stroup fails to recognize that in 1991, the Social Security Administration promulgated a regulation entitled "Evaluating medical opinions about your impairment(s) or disability." 20 C.F.R. § 404.1527. The regulation provides that

> [i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

Id. § 404.1527(d)(2); see also id. § 416.927(d)(2) (same regulation for SSI cases).

The 1991 regulations supersede the "treating physician rule" from our prior case law. See Schisler v. Sullivan, 3 F.3d 563, 568 (2d Cir. 1993) (holding that the 1991 regulations are binding on the courts and supersede the Second Circuit's "treating physician rule"); Winford v. Chater, 917 F. Supp. 398, 400 (E.D. Va. 1996) ("This regulation [§ 404.1527] supersedes the Fourth Circuit's `treating physician rule,' which the Magistrate Judge applied in this case."); see also Craig, 76 F.3d at 590 (applying § 404.1527 in deciding whether the ALJ gave proper weight to a treating physician's opinion). Section 404.1527 therefore is the controlling standard for evaluating the medical opinions in the instant case.

_____

argues that the ALJ did not have to give any weight to Ms. Jacobs' opinions because she is not an "acceptable medical source." See 20 C.F.R. § 404.1513. We need not consider whether Ms. Jacobs qualifies as an acceptable medical source because Dr. Tsao worked with Ms. Jacobs in diagnosing Stroup, thus providing an "acceptable medical source" for the opinions.

8

Dr. Tsao found that Stroup had major problems with attention and vigilance, and demonstrated major deficits in her short-term memory and ability to concentrate. Dr. Tsao also assessed Stroup's ability to do work-related activities as "poor to none" in eight categories, including Stroup's ability to follow work rules, function independently, and carry out simple job instructions.

Dr. Perlman, although not a treating physician, agreed with Dr. Tsao's analysis. Dr. Perlman found that Stroup's ability to adjust to any job was poor because Stroup was unable to do the following: (1) follow work rules; (2) deal with work stresses; (3) function independently; (4) maintain concentration/attention; and (5) understand and carry out simple job instructions. Dr. Perlman therefore concluded that Stroup was not capable of performing even a"simple sedentary job."

The opinions of Dr. Tsao and Dr. Perlman were the only professional opinions cited by the ALJ dealing with Stroup's capacity to return to the workforce.[3] The ALJ disregarded these opinions based on the reports of Mr. DeVanney and Dr. Zarchin. Neither Mr. DeVanney nor Dr. Zarchin, however, offered an opinion concerning whether Stroup could return to the workforce. Instead, the ALJ relied on selected passages of their reports in finding that Stroup was capable of doing "light work."

The ALJ relied on the fact that "Mr. DeVanney noted testing also indicated [Stroup's] immediate visual memory was within normal limits." While two of DeVanney's tests indicated that Stroup's immediate visual memory was within normal limits, a third test showed "evidence of severely impaired immediate visual memory--organic dysfunction." The ALJ did not cite DeVanney's third visual memory test nor did he explain why it was less persuasive than the other tests conducted by DeVanney. The ALJ also failed to cite other portions of DeVanney's report that suggested that Stroup's impairment was severe. For instance, DeVanney found that Stroup had

_____

[3] We assume that the ALJ correctly disregarded the opinions of Dr. Mikszewski and Dr. Kay because their opinions only dealt with whether Stroup could return to her former job with the DMV. The doctors did not address whether Stroup was capable of performing any job.

9

> intellectual loss compared to her premorbid functioning, with short-term memory impairment at the severe level. Her verbal processing difficulties are at the moderate level and there is organic brain dysfunction of an amnestic and depressed mood syndrome type, at the moderate level.

The ALJ did not explain why these findings were consistent with his determination that Stroup was capable of performing light work.

The ALJ also relied on the portion of Dr. Zarchin's report stating that Stroup's cognitive dysfunction was "mild" other than her short-term memory loss. The ALJ failed to explain why a diagnosis of "mild cognitive dysfunction," unrelated to a determination of whether Stroup can return to the workforce, was sufficient to discredit the reports of two physicians, including a treating physician, who made specific findings that Stroup was incapable of working in any position.

Because the ALJ did not explain adequately why the reports of Mr. DeVanney and Dr. Zarchin were a sufficient basis for rejecting Dr. Tsao's opinion, we cannot determine whether the ALJ properly rejected Dr. Tsao's treating physician's opinion as "inconsistent with the other substantial evidence in the record." 20 C.F.R. § 404.1527; see also Murphy v. Bowen, 810 F.2d 433, 437 (4th Cir. 1987) (remanding a claim for disability benefits because the ALJ did not explain adequately why he credited one doctor's views over those of another doctor). We therefore must remand the case to the ALJ for a new hearing where the parties will have the opportunity to supplement the record with additional evidence concerning Stroup's ability to return to the workforce.

B.

Because it is likely to be an issue on remand, we will also address the ALJ's reliance on the testimony of Dr. Lawrence, the vocational expert. We have held that "[i]n order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (citation

10

omitted). Here, the ALJ asked Dr. Lawrence whether he could identify any light or sedentary work not requiring "any significant amount of stress and not requiring <u>any good short-term memory</u>." In response, Dr. Lawrence noted several positions that would be low stress and "would not <u>rely heavily</u> upon short-term memory."

These questions did not fairly set out all of Stroup's impairments because all of the professionals agree that Stroup's short-term memory is "severely impaired." Questions about positions that do not require "good" short-term memory are not helpful in identifying positions for someone with Stroup's limitations. Therefore, if the ALJ relies on the testimony of a vocational expert on remand, he must ensure that the expert identifies positions that require little or no short-term memory.

III.

For the foregoing reasons, we vacate the judgment of the district court and remand with instructions to remand to the ALJ for further proceedings in accordance with this opinion.

<u>VACATED AND REMANDED</u>

11